## Wilson v. Hite's Executor.

(Decided May 27, 1913.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. **Bonds—Supersedeas Bond Executed Before Appeal Granted— Validity of.**—The clerk has no authority to accept a supersedeas

bond before an appeal has been granted, and a bond so accepted is void as a statutory bond and imposes no liability upon a surety, although it might be enforceable as a common law obligation.

2. Bonds—Surety May Execute and Leave with Clerk to be Accepted Later.—A supersedeas bond may be executed by the surety and left with the clerk under an arrangement that the clerk will accept and approve it when the appeal has been granted and he has authority to take the bond.

3. Bonds—Acceptance Necessary to Validity of—Acceptance Shown.— The acceptance and approval by the clerk of a supersedeas bond is indispensable to its validity, although it is not essential that its acceptance and approval should be shown by the record. Where the record is silent, acceptance and approval may be shown by facts and circumstances independent of the record.

4. Indemnity—Right of Indemnitee to Satisfy His Liability by the Execution of a Note.—An indemnitee who has incurred liability may satisfy the same by the execution in good faith of his note to the creditor, and assert a claim for the amount of the note against the indemnitor.

5. Indemnity—When Indemnitee May Not Assert Claim Against Indemnitor.—An indemnitee cannot assert a claim against his indemnitor on a fictitious or pretended liability, or on account of the payment of a debt that he was not legally liable for, or when he obstructs or defeats litigation through which he might be saved from loss, or by the execution of a note that is accepted by the creditor merely for the purpose of making a claim that the indemnitee may present against his indemnitor.

O'DOHERTY & YONTS and WALTER S. MENDEL for appellant.

HUMPHREY, MIDDLETON & HUMPHREY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In September, 1906, George E. Hazzard obtained a judgment in the Meade Circuit Court against the Louisville & Evansville Packet Co., a corporation, for the sum of $5,000. A motion for a new trial was made in due time but was not disposed of by the court until January, 1907, when it was overruled. Thereupon an appeal was prosecuted by the Packet Co. to this court, and the judgment of the lower court affirmed.

At the time of the trial in the Meade Circuit Court, George H. Wilson, the appellant, was connected in some manner with the Packet Co., and signed as surety a supersedeas bond executed by the Packet Co., when it prosecuted its appeal from the judgment in favor of Hazzard. It appears that Wilson signed this supersedeas bond under an agreement with Hite, who was an of-

ficer and the principal owner of the Packet Co., that he would protect him against loss on account of his suretyship, and in 1908 Hite executed and delivered to Wilson the following bond of indemnity:

"THIS WRITING WITNESSETH: THAT WHEREAS, George H. Wilson became, at the request of the writer, W. W. Hite, surety on a supersedeas bond in the case of Hazzard v. Louisville & Evansville Packet Company, pending in the Meade Circuit Court, in order that said case might be appealed to the Court of Appeals of Kentucky, the said W. W. Hite being the principal owner and holder of stock in the said Louisville & Evansville Packet Company, and whereas the said W. W. Hite agreed and promised said George H. Wilson to indemnify and hold the said Wilson entirely harmless and to reimburse the said Wilson for any and all amounts that said Wilson may be required to pay by reason of said supersedeas bond:

"Now, I, W. W. Hite, for and in consideration of the premises, do hereby agree and bind myself, my executors and administrators, to pay any and all sums that George H. Wilson, or his heirs, executors or administrators may have to pay by reason of said ,supersedeas bond, and on account of judgment rendered in said action of Hazzard v. Louisville & Evansville Packet Company, and I agree and bind myself to see that the said George H. Wilson is held entirely harmless in said matter."

Upon the affirmance of the case of Hazzard v. The Packet Co. in this court an execution was issued on the judgment in the Meade Circuit Court but as the Packet Co. was then insolvent, the execution against it was returned "no property found." Thereupon Hazzard brought suit against Wilson in the Jefferson Circuit Court upon the supersedeas bond executed by him. While this suit was pending in the Jefferson Circuit Court, and in August, 1908, Hazzard assigned in writing to George W. Check all of his right, title and interest in the Meade County judgment, and on November 28, 1908, while the suit was yet pending, Wilson executed to Check in settlement of his liability under the judgment his note for $6,215.15.

Sometime after this W. W. Hite died, and in the suit to settle his estate Wilson asserted a claim against the estate in the amount of the note he had executed to Check, and asked that he have allowed to him the

amount thereof out of the estate of Hite. The executor
of Hite filed exceptions to this claim, and when the mat-
ter came on for hearing the lower court sustained the
exceptions, and Wilson prosecutes this appeal.

The two grounds relied on by counsel for Hite's es-
tate why the claim asserted by Wilson should not be
allowed are (1) that the supersedeas bond was void and
Wilson incurred no liability thereunder; (2) if he was
liable, he had not suffered any loss by reason of signing
it, and, therefore, could not assert any claim for indem-
nity against Hite's estate by virtue of the bond of in-
demnity executed to him by Hite.

Of course if the supersedeas bond was void, it im-
posed no liability on Wilson, and, therefore, Wilson
could have no claim against Hite's estate on the bond
executed by Hite to save him harmless, but we do not
agree with counsel that the supersedeas bond was void
or that Wilson did not incur any liability by signing it.
The argument in support of the proposition that the
bond was void is rested on the ground that it was signed
by Wilson before the motion for a new trial was over-
ruled and before an appeal was prayed or granted from
the judgment in favor of Hazzard against the Packet
Company.

The circumstances surrounding the execution of the
bond, and about which there is no dispute, are these:
Wilson, who was in Meade County when the judgment
on the verdict against the Packet Company was entered,
was anxious to return to his home in Louisville, and did
not want to return again to Meade County for the pur-
pose of signing as surety the supersedeas bond that the
Packet Company contemplated giving to stay the judg-
ment, pending the appeal if its motion for a new trial
was overruled, and so he requested the clerk to permit
him to then and there sign the supersedeas bond, but the
clerk told him that as the motion for a new trial had not
been disposed of, and as no appeal had been prayed or
granted, he could not then accept a supersedeas bond.
However, upon the insistence of Wilson that he be
saved if possible another trip, the clerk told him that he
would prepare the bond and let him sign it, and he, the
clerk, would keep it until the motion for a new trial was
ruled on, and if the motion was overruled and an appeal
prayed and granted, he would then accept and approve
the bond and issue an order of supersedeas thereon,
staying proceedings on the judgment.

Under these circumstances, the supersedeas bond was prepared and signed by the Packet Company as principal and by Wilson as surety, and left in the possession of the clerk, and in January, 1907, after the motion for a new trial had been overruled and an appeal prayed and granted, the clerk formally accepted and attested the supersedeas bond and issued the order of supersedeas.

It is conceded that the clerk had no authority to accept the supersedeas bond in October, 1906, or until after the motion for a new trial had been overruled and an appeal had been prayed and granted, and it cannot be doubted that if the supersedeas bond had been accepted and approved in October it would have been void as a statutory bond and have imposed no liability upon the surety. Jones v. Green, 12 Bush, 127; American Accident Co. v. Reigart, 92 Ky., 142; Leonard v. Cowling, 121 Ky., 6371; Asher v. Cornett, 126 Ky., 569; Turner v. Wickliffe, 146 Ky., 776; Torbitt & Castleman v. Middlesboro Grocery Co., 147 Ky., 343.

What the liability of a surety on such a bond would be if it could be treated as a common law obligation, it is not necessary to determine, but we may observe that there are cases holding that although a bond be of no force or effect as a statutory bond, it may be obligatory upon the surety as a common law obligation. Spooner v. Best, 8 Ky. Law Rep., 105; Cotton v. Wolf, 14 Bush, 238. Clay v. Edwards, 84 Ky., 548.

As it conclusively appears that the bond was not formally accepted or approved in October or until the clerk did have authority to accept and approve it, the question arises, did the clerk have the right to hold the bond conditionally or as an escrow until the conditions arose that authorized him to accept it, and did his acceptance then have the same effect as if the bond had been then executed We think there can be no doubt that Wilson in October might have left with the clerk a power of attorney authorizing the clerk to sign his name to a supersedeas bond at any time subsequent thereto when the clerk might legally take the bond, and there seems to be no material difference between what happened here and what would have happened if, in place of signing this bond and leaving it with the clerk, Wilson had signed a power of attorney and left it with the clerk. What occurred was in substance a direction by Wilson to the clerk to accept the paper as a bond when

the time arrived that it could be so accepted. In other words leaving the paper with the clerk was in effect the same as if it had been left by Wilson with a third party to be handed to the clerk when the time for its execution arrived. Under the arrangement between Wilson and the clerk the bond merely remained in the office of the clerk as a paper without binding force or effect on the parties who signed it until it was accepted by the clerk.

Having this view of the matter, and it being the settled law in this state that a bond may be left with the clerk to become effective when certain conditions agreed on between the clerk and the signers of the bond at the time it is placed in the custody of the clerk. are complied with, we hold that the bond was a valid, statutory obligation. Carswell v. Renick, 7 J. J. Mar., 281; Whitaker v. Crutcher, 5 Bush, 621; Smith v. Spraggin, 109 Ky., 535.

The remaining question is, did Wilson suffer any loss or incur any liability by becoming surety on this bond? The bond of indemnity obliged Hite to "hold the said Wilson entirely harmless and to reimburse the said Wilson for any and all amounts that said Wilson may be required to pay by reason of said supersedeas bond," and "to see that the said George H. Wilson is held entirely harmless in said matter."

It will thus be observed that this bond of indemnity is as broad as language can make it. It not only indemnified Wilson against any money that he might have to pay on account of his suretyship, but also saved him harmless against any liability that he might incur. So that if Wilson has suffered any loss. or has incurred any liability by reason of his suretyship, he has recourse on the bond of indemnity to protect him from all loss or liability that he has incurred.

We have already determined that the supersedeas bond executed by Wilson was a valid obligation, and this being so, it necessarily follows that Wilson incurred a liability under this bond for the full amount of the judgment obtained by Hazzard against the Packet Company, which is the sum for which Wilson executed his note to Check. But it is insisted that Wilson, by his acts subsequent to the Hazzard judgment, lost his right to assert this liability as a claim against Hite's estate, and we will now look into this feature of the case.

It appears that a demurrer was sustained, on October 10, 1908, to the petition filed by Hazzard against Wil-

son, in which he sought to recover a judgment against him for the amount due on the supersedeas bond, and it further appears from the record that on October 17, 1908, an amended petition was filed curing the omission to state in the petition facts essential to constitute a good cause of action.

Again in October, 1908, a demurrer was filed to the petition as amended, but no ruling was made on this demurrer, nor was any step thereafter taken in the case, until January 16, 1909 when, on motion of Hazzard, the action was dismissed without prejudice. As we have heretofore stated, Hazzard, in August, 1908, assigned his interest in the judgment to Check, and in November, 1908, Wilson executed his note to Check in settlement of the judgment.

It further appears that Hite employed counsel to represent Wilson in the suit of Hazzard, and that this suit, after the execution of the note, was dismissed without prejudice, instead of being dismissed settled. It is also shown that Wilson executed the note without consulting the attorneys employed by Hite to represent him in the defense of the suit, and that he did not have sufficient property to pay the note when it was executed, and since its execution no effort has been made to collect from him any part of it.

But although Wilson, by signing the bond, had incurred a liability for the amount of the judgment that he could not escape from, it is nevertheless insisted by counsel for Hite that the facts we have recited concerning the execution of the note show that it was not executed in good faith or intended to be a bona fide liability against Wilson, but was executed merely for the purpose of giving Wilson the right to assert a claim against the estate of Hite, and without any intention on the part of enther Wilson or Check that Wilson would be expected or required to pay the note.

These inferences, although entitled to consideration in determining the good faith of Wilson in executing the note and the bona fides of the transaction, are not sufficient to overcome the uncontradicted evidence that Wilson in good faith executed the note in settlement of the claim asserted against him in the suit, and that there was no arrangement or understanding at any time that he should not be liable for the full amount of it.

Nor does the fact that Wilson did not have sufficient property to pay the note at the time he executed it, or

the fact that he has not since paid it, operate to deny him the right to present the full amount of it as a valid and existing liability. When the creditor, Check, accepted the note in satisfaction of the Hazzard judgment, thereby agreeing to look to the note alone for payment of the liability, Wilson at once became invested with a right to assert the amount of the note against his indemnitor, although Wilson may not have been able to pay the note or have since paid any part of it. We can imagine a state of case in which, because of the insolvency of the payor in a note, and the improbability that he might ever be able to pay any part of it, there would really be no assumption of liability by the execution of a note; but the condition of Wilson does not justify the application of such a rule. When he signed the supersedeas bond he was a man of considerable means, and although he has since lost some of his property, may again acquire estate sufficient to pay the full amount of the note.

It should also be kept in mind that the counsel employed by Hite to represent Wilson in the suit of Hazzard could not have defeated a recovery by Hazzard, because Wilson had no defense to this suit except the one that the bond was void for the reasons urged by counsel and heretofore stated, and as this did not constitute any defense, of course judgment would have gone against Wilson when the suit of Hazzard came on for trial.

In view of these facts and the further fact that Wilson had no defense to make to the suit and that a judgment would certainly have gone against him equal to the amount of the note, it does not seen to be a material circumstance that he executed a note in the same amount that the judgment would have been given for, if the note was executed in good faith as a settlement of the liability. If a judgment had gone against Wilson in the suit of Hazzard, it could not have been successfully maintained that he had not incurred a liability in the amount of the judgment, or claimed that he should not be allowed to present a demand based on the judgment as a claim against the estate of Hite, although the judgment may have been unsatisfied and Wilson without sufficient property to pay it. And so, as the execution of the note was a bona fide transaction, and only fixed the liability in the same amount as a judgment would

have done, it created in his behalf a demand that he had a right to assert against Hite's estate.

Counsel for appellant also question the right of a surety or indemnitee to seek relief against his principal or indemnitor by the mere execution of a note in settlement of his liability for the payment of a debt due by the principal or indemnitor. But whatever the rule may be in other jurisdictions, it is well settled here that a surety who satisfies the creditor of his principal by executing in good faith his note may assert the amount for which he executed the note as a valid demand against his principal. Stubbins v. Mitchell, 82 Ky., 535; Greene v. Anderson, 102 Ky., 216; Robertson v. Maxcey, 6 Dana, 101; Mitchell v. Bank of Commonwealth, 1 Dana, 84; Burns v. Parrish, 3 B. Mon., 8; and in respect to the piont under consideration there is no material difference between the rights of a surety and an indemnitee.

Of course a surety or an indemnitee should not be allowed to assert a claim against his principal or indemnitor arising on a fictitious or pretended liability, or on account of the payment of a debt that he was not legally liable for. Nor will a surety or indemnitee be permitted, by a settlement of a claim or demand, to obstruct or defeat pending litigation or negotiations between the creditor and the principal or indemnitor in or through which he may be saved from loss, or allowed to enter into an arrangement or agreement with the creditor by which the creditor accepts a note merely for the purpose of making a claim that the surety or indemnitee may present against his principal or indemnitor. American Surety Co. v. Ballman, 104 Fed., 634; Robb v. Security Trust Co., 121 Fed., 460; Wheeler v. Sweet, 137 N. Y., 435. But the facts of this case do not bring it within the scope of any of these exceptions.

It is true that Wilson has not paid the note executed to Check, and that no effort has been made to collect it, but it is, nevertheless, a bona fide existing liability against him, and when Hite's estate is required to indemnify him against this liability, it will only be doing what Hite agreed in the bond of indemnity to do. As we have heretofore observed, the indemnity was not merely to protect Wilson against loss but to hold him harmless from liability, and while it may be true that under an indemnity limiting the liability of the indemnitor to such actual loss as the indemnitee may sustain, the indemnitee will be bound by the strict letter of the undertaking

and cannot seek redress from his indemnitor until he has actually sustained some loss. This rule cannot in fairness be applied to the bond of indemnity executed by Hite which is more than an undertaking to save Wilson from actual loss. Lewis v. Crockett, 3 Bibb., 196.

For the reason indicated, the judgment is reversed, with direction to proceed in conformity with this opinion.