## AETNA CASUALTY & SURETY CO. *v.* PHOENIX NATIONAL BANK & TRUST CO.

No. 413. Argued January 25, 1932.—Decided March 14, 1932.

---

* See authorities cited in note, 14 Am. Dec. 560.

*Mr. Samuel M. Wilson,* with whom *Messrs. Charles Kerr, Clinton M. Harbison,* and *A. K. Shipe* were on the brief, for petitioner.

*Mr. James Park,* with whom *Messrs. Richard C. Stoll* and *Wallace Muir* were on the brief, for respondent.

Mr. Justice Stone delivered the opinion of the Court.

This suit was brought by respondent, a national bank, in the Circuit Court of Fayette County, Kentucky, to re-

cover on a bond of indemnity issued by the petitioner. The cause was removed to the United States District Court for the Eastern District of Kentucky, which, after a trial by the court upon an agreed statement of facts, gave judgment for petitioner. Judgment of reversal by the Court of Appeals for the Sixth Circuit, 44 F. (2d) 511, is here for review on certiorari.

The indemnity bond, issued upon payment of a stipulated premium, undertook to indemnify the respondent for "any loss through the payment . . . of forged or raised checks or (genuine) checks bearing forged endorsements. . . ." On different dates between May 12, 1924, and June 23, 1925, while the bond was in force, a corporation depositor of respondent drew thirty-nine checks upon its deposit account in favor of third persons. The endorsements of the payee on thirty-five of the checks were forged, and the amounts payable on the other four and on eighteen others were raised by one Fulton, who was the vice president and treasurer of the depositor, having charge of its checkbooks and books of account. Authority to sign the checks was vested in the president and one other, who was not an officer of the depositor. All the checks bore genuine endorsements made subsequent to the forgeries, two of them by Fulton alone. All were paid by respondent on presentation, and the amounts paid were charged to the depositor's account. Monthly statements were rendered to the depositor, accompanied by the cancelled checks. No agents or representatives of the depositor other than Fulton, the forger, examined the depositor's accounts, cancelled checks, or books of account. The checks were prepared for signature by Fulton. The representatives of the depositor who signed them relied wholly on him for their accuracy and for the names of the payees. All of the raised checks "were completed in writing by Fulton, except that the line for the application of the protectograph was left blank, and

were signed, before the application of the protectograph to them. And Fulton was trusted to fill in the line stating the amount of the cheque, with the protectograph, and was charged with the duty of delivering the cheques, whether by mail or in person."

About August 7th, a month after the payment of the last check, the depositor gave notice of the forgeries to the respondent and demanded that the sum of $5,512.72, representing so much of the payments as were induced by the forgeries, be recredited to its account. The respondent in turn asked payment of that amount of petitioner in satisfaction of its liability on the indemnity bond. Petioner, while admitting liability if respondent was not authorized to charge the depositor with the loss, insisted that the depositor was so chargeable because of its negligence and delay in notifying respondent of the forgeries and its negligence in drawing the checks. It offered to defend any suit brought against the respondent by the depositor with respect to the loss, and asked respondent to give notice of the forgeries to prior endorsers and to demand reimbursement from them. Respondent failed to comply with any of these requests and later credited its depositor with the disputed amount.

The petitioner, by way of defense, set up specifically the bank's assumption of the loss by crediting the depositor in the face of the latter's alleged negligence and omissions. The court below thought that the question presented was merely one of the time of the loss indemnified against, and as that had occurred when the checks were paid by respondent, later events determining the ultimate incidence of the loss as between the bank and its depositor or endorsers, were immaterial. Hence it concluded that the subsequent credit to the depositor of the amount of the loss and the consequent relinquishment of any claim against the depositor or others, had no bearing on the liability of the indemnitor. The court said:

". . . in the present case, the loss was suffered and the liability arose from time to time as the checks were paid; and, when finally the bank cancelled the charges and recredited the total, it was not then suffering a loss; it was abandoning a claim for recoupment of its earlier loss—a claim which at first it did not have. We think, therefore, that the policy should be read as indemnity against the original loss, and not as holding the liability in the air until it can finally be determined whether the bank had a right to make the charge back." 44 F. (2d) 511, 512.

We think that the respondent could not relinquish any claims it might have had against the depositor and preserve unimpaired its right to the indemnity. Petitioner's undertaking " to indemnify . . . and hold harmless " the respondent from any loss sustained by reason of the specified payments, contained no words indicating an intention to destroy the indemnitor's usual privilege of subrogation to the indemnitee's right to recover from any who are liable to it for the loss. That privilege was a necessary incident to petitioner's contract, for only by resort to it could the character of the contract as indemnity be preserved. It is both the object and the justification of subrogation that it makes exact indemnity the measure of the liability. See *Standard Marine Insurance Co., Ltd.* v. *Scottish Metropolitan Assurance Co., Ltd.,* 283 U. S. 284; *United States* v. *American Tobacco Co.,* 166 U. S. 468; *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Commercial Union Ins. Co.,* 139 U. S. 223, 235; *Hall & Long* v. *The Railroad Companies,* 13 Wall. 367; *Jones* v. *Bacon,* 145 N. Y. 446, 450; 40 N. E. 216.

Even though we assume, as the court below held, that petitioner's liability attached on payment of the checks, and that respondent had none the less suffered a loss even though it might be able to recoup it from others, see

*Champion Ice Mfg. & Cold Storage Co.* v. *American Bonding & Trust Co.,* 115 Ky. 863; 75 S. W. 197, respondent was still under a duty not to impair the rights which petitioner, upon payment of its obligation, might enforce against third persons. The failure to observe that duty, by stating an account which relinquished all claims against its depositor, see *Greenhalgh Co.* v. *Farmers' National Bank,* 226 Pa. 184, 188; 75 Atl. 260, released the petitioner from the liability which had already accrued. See *Sims* v. *Mutual Fire Ins. Co.,* 101 Wis. 586; 77 N. W. 908; *Illinois Automobile Ins. Exchange* v. *Braun,* 280 Pa. 550; 124 Atl. 691; *American Surety Co.* v. *Ballman,* 104 Fed. 634; *Jones* v. *Bacon, supra.* To hold that respondent could, without affecting its indemnity, release its rights against those who might be liable for its loss would be to hold, by a parity of reasoning, that respondent could enforce them with a similar lack of effect upon its right to recover from petitioner. In either case petitioner's contract would be converted from one of indemnity, as stipulated, into an unqualified obligation to repay to the bank the amounts which it was induced to pay by the forgeries.

It is unnecessary to decide with finality what might have been the rights of the bank against other parties. It is enough to say that neither the decisions in the federal courts nor the statutes and decisions of Kentucky, which are controlling, preclude a successful defense to assertion of a claim by the depositor.[1] If the indemnitee assumes

[1] Carroll's Ky. Stat. (1930) §§ 3720b–124, 125, provide that material alterations avoid a negotiable instrument "except as against a party who has himself made, authorized or assented to the alteration and subsequent endorsers." These sections have been interpreted as permitting a holder to enforce the instrument where the maker has negligently left blank spaces which have been filled out in violation of the maker's authority. See *Hackett* v. *First National Bank,* 114 Ky. 193; 70 S. W. 664; *Woolfolk* v. *Bank of America,* 73 Ky. 504; *Blakey*

to relinquish its rights without the consent of its indemnitor, the burden rests on it to establish that they are nonexistent or unsubstantial. See *Wilson* v. *Hite's Executor*, 154 Ky. 61, 69; 157 S. W. 41; *Wheeler* v. *Sweet*, 137 N. Y. 435, 443; 33 N. E. 483.

The court below thought that it was not reasonable to suppose that the bank had intended to buy a kind of indemnity which would involve it in litigation with its depositors, since the purpose of the bank was to keep its depositors and not to alienate them. As the liability had already attached on payment of the checks, the bank might have sued its indemnitor at once, and was not called on to defend itself against claims of its depositor or to prosecute its own claims against the endorsers. *Insurance Co.* v. *Stinson*, 103 U. S. 25. But it could not, as it has sought to do, retain its indemnity and withhold from its indemnitor the privilege of contesting or making such claims. See *American Surety Co.* v. *Greek Catholic Union*, 284 U. S. 563. If such was respondent's object, it should have taken from petitioner not a contract of indemnity, as it did here, but one to pay to it all amounts disbursed on forged checks.

*Reversed.*

---

v. *Johnson*, 76 Ky. 197, 204; *Cason* v. *Grant County Deposit Bank*, 97 Ky. 487; 31 S. W. 40; *Diamond Distilleries Co.* v. *Gott*, 137 Ky. 585; 126 S. W. 131. Compare *Commercial Bank* v. *Arden & Fraley*, 177 Ky. 520; 197 S. W. 951; *Maryland Casualty Co.* v. *Dickerson*, 213 Ky. 305; 280 S. W. 1106; *Rice & Givens* v. *Citizens National Bank*, 51 S. W. 454; 21 Ky. L. R. 346. And see *Champion Ice Mfg. & Cold Storage Co.* v. *American Bonding & Trust Co.*, 115 Ky. 863, 874–875; 75 S. W. 197; *London Joint Stock Bank, Ltd.* v. *MacMillan & Arthur*, [1918] A. C. 777.

As to the possibility that the depositor may have been estopped to assert a claim against the bank, because of negligence in examining its statements and accounts, see *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 96; *Empire Trust Co.* v. *Cahan*, 274 U. S. 473, 479–480; *Critten* v. *Chemical National Bank*, 171 N. Y. 219; 63 N. E. 969.