## FIRST STATE BANK OF ROCKSPRINGS, TEX., v. STANDARD ACC. INS. CO. OF DETROIT, MICH.

### No. 8480.

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1938.

Woodville J. Rogers, of San Antonio, Tex., for appellant.

Josh H. Groce, of San Antonio, Tex., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant sued for the claimed breach of two fidelity insurance contracts, executed by appellee as surety on the bonds of Grooms, as cashier, and of Singleton, as assistant cashier of appellant bank. The

bonds were each thus conditioned: "That whereas the said officer in the service of the Bank * * * Now, therefore, if the above bounden officer and surety shall hold the bank harmless against, and pay to it such pecuniary loss as it may sustain of money or other valuable securities embezzled, wrongfully abstracted, or willfully misapplied ·by the said officer in the course of his employment as such * * * then this obligation is void, otherwise to be and remain in full force and effect."

The claim was that during the time the contracts were in force, the two officers, acting together, embezzled, willfully misapplied, and wrongfully abstracted the bank's money by wrongfully drawing checks on the deposit account of the Edwards County Wool & Mohair Warehouse Company, of which they were, respectively, general manager and secretary and treasurer, and appropriating the sums thus drawn to their own use.

In amplification of the claim it was alleged that the deposit account of the corporation was handled entirely by, and was under the complete control of, these two officers, who made the deposits and had general and unlimited authority to draw upon the account; that they agreed that they would misappropriate and misapply moneys and funds of the bank and would conceal the same from the bank's directors, by drawing a series of checks against the account of the warehouse company and using them as a basis to issue the deposit tickets of the bank to themselves; that, pursuant to said system, between July, 1929, and April, 1933, they wrongfully drew out and appropriated the moneys sued for.

The defense, in addition to a general denial, was that the bond was not an unqualified obligation to repay to the bank moneys wrongfully withdrawn from it, but only one of indemnity against loss by the bank, from such drawings, and that the bank had failed to show any loss, or even liability to loss, through the dealings complained of.

A further defense was that, if the bank has sustained any loss on account of these checks, it is not because the bank was liable for the acts of the principals on the bonds, but because the bank voluntarily assumed the liability which it was not legally under, to the prejudice of the surety, and in violation of the bank's duty to defend itself and the surety against claims of liability not well founded in law.

When plaintiff closed its case, this was the state of the evidence.

The officers, directors, and stockholders of both bank and warehouse company were the same, and Grooms and Singleton were active managers of both institutions. The warehouse company was engaged in receiving and selling wool and mohair of ranchmen in that country on a large scale, its deposits running from $100,000 to $200,000 a year. Grooms and Singleton made all the deposits in, and drew all the checks on, the account, payable to any and every one the warehouse company did business with. Grooms, as general manager of the company, had authority to and did make advances to the owners of the wool and mohair in the warehouse, and did sell and pay to the owners the proceeds of the sales. Throughout the years in question the directors of the warehouse company would meet to pass on notes and loans, and business transactions the company had made.

No one testified that Grooms and Singleton had ever asked for, or obtained, authority to draw the warehouse company's moneys and lend them to themselves on their notes. On the contrary, several of the directors testified that they had no such authority, and that their notes had never been presented to and approved by the board. On the other hand, though the checks drawn were charged against the warehouse company on the bank's books and shown in the statements as charged, no complaint was ever made, by the warehouse company to the bank, of their drawing, nor has the warehouse company ever made a claim against the bank on account of it.

J. L. Greer, president of both concerns, testified: "I have been president of both concerns since 1935, and so far as I know, there has never been any claim made by the Warehouse Company against the bank."

Mr. Miller, active vice-president of the bank since August 12, 1935, testified that on March 7, 1936, a bank directors' meeting was called for the purpose of, and it resulted in, having the bank's representative file a claim against appellee on its bonds, but no entry was made on the books of the bank indicating, or tending to indicate, recognition of the bank's liability, until a few days before the case went to

trial on March 29, 1937. The entries then were made on the debit side of the journal, a claim against the Standard Accident Insurance Company on its bond for $10,000 was set up as an asset, and on the credit side there was "suspense account, Edwards County Wool and Mohair Warehouse Company bond claim on the Standard Accident Insurance Company." On cross-examination he testified: "By that method the bank has admitted its liability to the Warehouse Company on these claims. It always has admitted its liability to the Warehouse Company and does now. By the statement of these accounts, it has admitted the liability of the bank to the Warehouse Company." Whereupon the defendant rested, without offering any evidence, and moved for an instructed verdict.

The District Judge, of the opinion that the proof failed to show that the bank had sustained a loss, granted the motion and instructed a verdict. This appeal from the judgment on the verdict tests the ruling for error.

Appellee, insisting that the District Judge was right in the reason he gave for instructing the verdict, urges upon us that the instruction was right for the further reason that the proof not only failed to show that the bank had sustained a loss, but it affirmatively showed that the bank could not, in law, be held answerable to the warehouse company for the acts of Grooms and Singleton in drawing their principal's money out and appropriating it to their own use.

■ We agree with appellee. To hold the surety upon the bond it was incumbent upon the bank to show that Grooms and Singleton had subjected it to legal liability to the warehouse company for the amounts of the checks the two had drawn, and that as the result of the enforcement of that liability the bank had sustained a loss. Aetna Casualty & Surety Co. v. Phoenix National Bank, 285 U.S. 209, 52 S.Ct. 329, 76 L.Ed. 709. The bank's proof completely failed as to both of these essentials.

■■ It was admitted that the warehouse company had never made claim against the bank, nor in any wise asserted the bank's liability to it, and that the bank had never paid the warehouse company the amount, or any part of the amount, of the checks whose drawing is complained of here, nor even reversed the charging of those checks to the warehouse company's account. Matters standing thus, the bank may not be indemnified for a loss it has never sustained. But this is not all. The record shows both that the bank was not liable to the warehouse company for the acts of Grooms and Singleton in drawing the checks and using the money as they did, W. Horace Williams Co. v. Broward Bank & Trust Co., 5 Cir., 69 F.2d 14; Farmers' Bank v. United States F. & G. Co., 5 Cir., 28 F.2d 676; Empire Trust Co. v. Cahan, 274 U.S. 473, 47 S.Ct. 661, 71 L.Ed. 1158, 57 A.L.R. 921; and that, if the warehouse company could ever have held it liable, its conduct in regard to the checks, and the long time that has elapsed since their drawing, prevent it from doing so now. These two had unlimited authority and power of disposition over the making and withdrawal of the warehouse company's deposits; they were, in respect of these deposits, its alter ego. Having entrusted these agents with such authority over its funds, the warehouse company could not charge the bank with liability for its misuse unless the bank actually knew, or had reason to know, that the principal's funds were being so diverted.

The evidence here not only fails to show that the bank knew, or ought to have known, that Grooms and Singleton were diverting warehouse company funds to their personal use, it affirmatively shows the contrary, for since they were at once managers of the bank and the warehouse company, and were acting in their own interests, and adversely to and in fraud of both bank and warehouse company, their knowledge could not be imputed to the bank as its knowledge, Connecticut Fire Ins. Co. v. Commercial National Bank, 5 Cir., 87 F.2d 968, and no other persons connected with the bank knew, or could have known, what was going on.

The judgment is affirmed.