**HATCH et al. v. TURNER.**

No. 6175.

Court of Civil Appeals of Texas. Texarkana.

Nov. 8, 1945.

Rehearing Denied Nov. 22, 1945.

O. B. Fisher, of Paris, for appellants.

Prentice Wilson, of Dallas, for appellee.

WILLIAMS, Justice.

George E. Turner, Jr., deceased, hereinafter referred to as the insured, purchased an automobile from Hatch Chevrolet Company in Stockton, California. The deferred payment in the sum of $1188.84, payable in twenty-four successive monthly installments, was evidenced by a conditional sales contract which retained a lien on the automobile in favor of Hatch. As a part of the transaction, insured purchased a life insurance policy through Hatch issued by the Occidental Life Insurance Company of Los Angeles, California, for which he paid $42.80, the premium called for in the policy. The policy bearing even date with the conditional sales contract, namely, May 5, 1941, was made payable to Hatch as their interests may appear at the time of and in the event of the death of the insured. This policy was delivered to and held by Hatch as further security on the deferred payments. In the application of insured, which application is attached to and made a part of the policy, the insured represented and disclosed in writing therein that his age was twenty-five years and his occupation at the time was a "flying cadet in the United States Army." He was then in training at an airfield near Stockton, California. He was still in training as a "flying cadet in the United States Army" at an airfield in Nevada when he was killed in an airplane accident on December 10, 1941, two days after the United States had declared war against Japan. After his death, Hatch, who had at all times retained possession of the policy, submitted proof of loss to the Insurance Company which denied liability under the policy, except the obligation to return the premium of $42.80. On March 5, 1942, Hatch accepted the $42.80 and credited such sum on insured's indebtednes and surrendered the original policy to the Insurance Company. Hatch made above settlement with the Insurane Company without the consent and over the protest of the administrator of insured's estate, and in the trial offered no testimony in explanation of their compromise, settlement and surrender of the policy. The Insurance Company was solvent at all times here involved.

The policy in question recited that the Insurance Company "Agrees to pay the sum of Eleven Hundred Eighty-Eight 84/100 Dollars or such lesser sum owing at the time of death of the Insured to Hatch Chevrolet Company, Creditor of George E. Turner the Insured immediately upon receipt of due proof of death during the continuance of this Policy. Such payment shall be subject to the following provision:

"The amount of insurance shall be as stated in the application herefor, and said insurance shall be on the Monthly Decreasing Term Insurance Plan for the term of 12 months which is the term of the Insured's contract of indebtedness with the Creditor. The amount so insured shall decrease each month as and when credits are allowed on the Insured's contract of indebtedness with the Creditor bearing the same date as stated in the application herefor, until the terms of said original contract of indebtedness expires.

"This policy is issued in consideration of the written and printed application therefor which is made a part of this contract and of the payment of Forty-two 80/100 Dollars, constituting payment for the number of months from the date of issue of this Policy as set forth in the preceding paragraph.

"This policy shall continue in force for the term of months stated above from the date on which it takes effect, and at the end of said period it shall cease and determine and be of no further effect. The provisions and conditions printed on the reverse side hereof are a part of this contract as fully as if recited over the signatures hereto."

Then follows date of policy, where issued, and the signatures of the President and Secretary of the Insurance Company. Insured's application for the insurance containing the data above mentioned then follows on the face of the policy. On the back of the policy, which is a one-sheet instrument, appears stipulations and conditions of the policy placed thereon in print by a power printing press. The provisions printed on the back will be omitted as they are not pertinent to any point here involved. Below the printed provisions just referred to appears a heavy line. Below said line, on the back of the policy, is an endorsement affixed thereon by a rubber stamp, which reads:

"This policy is issued on the express and essential condition that notwithstanding anything contained in any other provision hereof to the contrary, the amount payable hereunder shall be limited to the sum of the premiums paid hereon or the face amount of insurance, whichever shall be the less, in the event that death occurs from any cause while the insured is engaged in service in the air forces of any country at war or within six months after the termination of such service."

It was stipulated between the litigants that the above was a true and correct copy of the original policy so issued at the time of the purchase of the automobile, but it was further agreed that this stipulation "shall not prejudice the right of the appellee to contend and shall not constitute a waiver of contention that the stamped provision on the back of the policy is not a part of the policy and is not binding upon the representatives of the estate of George E. Turner, Jr., as a matter of law by reason of other provisions printed in the policy."

Shortly after insured's death, George E. Turner, Sr., qualified as administrator of his son's estate, and possession of the automobile which he still holds was delivered to him as such administrator by a summary court officer of the United States military services. After crediting the $42.80 on insured's indebtedness, H. B. Hatch et al., the members of a partnership, appellants herein, filed this suit against appellee, George E. Turner, Sr., individually, to recover by reason of his alleged conversion of the automobile, and against him in his official capacity to establish their debt and lien in the sum of $869.20, the alleged balance due on the purchase price after crediting the $42.80, and for certification of such judgment to the county court for observance in the administration of the estate.

Appellee, the defendant below, answered alleging that the insured simultaneously with the execution of the conditional sales contract and the purchase of the automobile, applied for and received a life insurance policy upon his life from above named insurance company of the face value equal to the amount of the balance of the original car indebtedness due by insured at the time of his death, payable to Hatch as his interest might appear; that said policy was purchased, issued and delivered in trust to Hatch for the specific purpose that Hatch would look to the Insurance Company for payment of any balance owing by insured on the contract at the time of his death; that the relationship of pledgor and pledgee existed between the parties and that Hatch

breached the trust by surrendering the policy and accepting from the Insurance Company the returned premium of $42.80 subsequent to the death of insured, by reason of which the estate of insured sustained damage in the amount equal to the car indebtedness which was an offset and counter claim against the car indebtedness. The judgment recites that plaintiffs and defendant each filed a motion for an instructed verdict at the close of the evidence and that the court instructed the jury to return a verdict for defendant pursuant to his request. The judgment decreed that plaintiffs take nothing by their suit. This record does not apprise this court of the specific ground or grounds in support of the trial court's action in instructing this verdict.

■ In the absence of pleading and evidence that the insurance laws of California are different, this court will indulge in the presumption that their insurance laws applicable to the insurance contract here involved were the same as the laws of Texas, at the time this policy was issued. 15 C.J.S., Conflict of Laws, § 3g, pp. 847–849; Blethen v. Bonner, 93 Tex. 141, 53 S.W. 1016.

Appellee contends that the rubber stamp or rider endorsement which sought to limit the insurer's liability upon the contingency as therein set out is of no force or effect in that it is condemned by and contravenes Art. 4733, Subdiv. 3, R.C.S.1925, which reads:

"No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company incorporated under the laws of this State, if it contains any of the following provisions * * * 3.·a provision for any mode of settlement at maturity of less value than the amounts insured on the face of the policy. * * * Any company may issue a policy promising a benefit less than the full benefit in case of the death of the insured by his own hand while sane or insane, or by following stated hazardous occupations * * *."

The holding in Universal Life Insurance Co. v. Grant, Tex.Civ.App., 117 S.W.2d 813, and cases therein discussed, lends some support to above position. It is unnecessary to determine if the limitation of liability upon the happening of the contingency as specified in the rubber stamp endorsement under all the facts or circumstances of every case should be classed as a hazardous occupation within the provisions of Article 4733, Subdiv. 3, supra.

■ The general exception set out in the rubber stamp endorsement is not within the terms of the specific exceptions authorized by Article 4733, subdiv. 3, which will under the facts and circumstances of this record limit insurer's liability only to the return of the premium paid. This is not a case where a life insurance contract, containing a military service clause, is issued to a civilian who later enters the military service. The change in the status of the relationship between the United States and Japan, namely the declaration of war, did not change the insured's occupation or activity of that of a flying cadet. Death here did not result from following a designated hazardous occupation different from the occupation which insured was following at the time the policy was issued. It is undisputed that the insurance company insured and intended to insure deceased in the occupation of that of a flying cadet (a student flyer), in the United States air forces and to assume all the risks or hazards involved in that occupation. Hence, under such facts and circumstances violence would be done to the rigid rule of construction in favor of the insured to yield to the conclusion that the mere declaration of war, ipso facto, relieved the insurer of all liability except a return of the premium. Dailey v. Preferred Masonic Mutual Acc. Ass'n, 102 Mich. 289, 57 N.W. 184, 26 L.R.A. 171; Schwindermann v. Great Eastern Casualty Co., 38 N.D. 584, 165 N.W. 982; 44 C.J.S., Insurance, § 297, pp. 1165, 1166; Boatwright v. American L. Ins. Co., 191 Iowa 253, 180 N.W. 321, 11 A.L.R. 1085, with cases discussed therein.

The provision of Art. 4732, Subdiv. 3 is not involved as the policy does not contain an incontestable clause.

■ Appellants having surrendered the policy and executed a release to the insurance company upon the latter's payment of $42.80, and this being done without the consent and over the objection of appellee, are under such circumstances bound to account to and liable to appellee, the legal representative of the insured, to the extent of the balance due on the car indebtedness. 41 Am.Jur., Pledge and Collateral Security, Secs. 52, 53, 72; 33 T.J. Sec. 29, 718; Seamans Oil Co. v. Guy, 114 Tex. 42, 262 S.W. 473, 115 Tex. 93, 276 S.W. 424; Aetna Casualty Co. v. Phoenix Nat. Bank, 285 U.S. 209, 52 S.Ct. 329, 76 L.Ed. 709; 49 C.J. p. 920; Llano Granite v. Hollinger, Tex.Com. App., 212 S.W. 151.

704

The judgment heretofore rendered on July 19, 1945, which reversed and remanded the cause for another trial is here set aside and the opinion of said date is withdrawn and the cause is hereby affirmed as of October 25, 1945.

Affirmed.

HARVEY, Justice (dissenting).

I am unable to agree with the conclusions reached in the majority opinion herein, and respectfully dissent therefrom. In its last analysis, the question determinative of the case is whether or not the stamped stipulation on the back of the policy limiting liability on the part of the insurer in case the insured dies while in the service of a country at war is valid. The provision is either valid or invalid, an answer to the question either way being decisive of this case.

In my opinion, it could hardly be contended that the stamped provision on the policy would not come within the definition of "printed" matter. Chapman v. Ferry, C.C. Or., 18 F. 539; Acme Coal Co. v. Northrup National Bank, 23 Wyo. 66, 146 P. 593, L.R.A.1915D, 1084, Ann.Cas.1917B, 564; MacMillan Co. v. King, D.C. 223 F. 862. It is agreed that the stamped provision was on the policy at the time of its delivery and acceptance; surely the intention of the parties to the contract would have some bearing in determining whether such provision was meant to be a part of the printed contract.

It is difficult to see how the determination of any additional fact issues, as suggested in the majority opinion, could be of any value in the disposition of the point presented. If the provision in question is enforceable, then no question is presented to the alleged breach of trust on the part of Hatch in accepting the premium that had been paid and in surrendering the policy. That would have been all he could have done under the circumstances. It seems to me an inescapable conclusion that the parties had a right to contract against the increase in hazards accruing by reason of a change in status of the insured. When the United States declared war on Japan, insured's status as a soldier in the service of the United States automatically changed; his duties, his occupation and the entire tempo of his life at once underwent a change, entailing hazards altogether different from peacetime conditions. As a flying cadet in peacetime he was insured; as such in time of war he was not. This is not only logical; it is reasonable and practical. The judgment of the trial court should be reversed and rendered in favor of appellant on the undisputed facts.