**TWO'S COMPANY, INC., Plaintiff,**

**v.**

**TRANSAMERICA INSURANCE COMPANY, Defendant.**

**No. 85 Civ. 9219.**

United States District Court, S.D. New York.

Oct. 1, 1986.

Samuel P. Rosen, Milgrim, Thomajan, Jacobs & Lee, P.C., New York City, for plaintiff.

Mark S. Gamell, Lewis Stockman, Hart & Hume, New York City, for defendant.

## MEMORANDUM AND ORDER

WALKER, District Judge:

### INTRODUCTION

Plaintiff Two's Company ("TC"), a New York corporation, brings this action to enforce an insurance contract with Defendant Transamerica Insurance Company ("Transamerica"), a California corporation and TC's insurer under an all-risk business, property, and casualty insurance policy.

Plaintiff moves for summary judgment on two of Transamerica's affirmative defenses. Defendant moves to disqualify plaintiff's counsel, Samuel D. Rosen, Esq., on the grounds that his testimony at trial would violate Disciplinary Rule 5-102(A). Both parties move for sanctions, pursuant to Fed.R.Civ.P. 11.

Plaintiff's motion for summary judgment is denied. Defendant's motion to disqualify plaintiff's council is granted. Plaintiff's and defendant's motions for sanctions are denied.

### FACTS

In October 1984, TC discovered an incident of employee theft. TC furnished Transamerica with a *pro forma* "Bond Proof of Loss" in the sum of $100,000, together with an affidavit signed by TC's employee Linda Williams, who admitted to the theft. On October 23, 1985, defendant denied payment on the claim, alleging that plaintiff had failed to furnish an itemized loss statement. A few days later, defendant notified plaintiff that the insurance policy would be cancelled, effective December 26, 1985.

TC brought suit in November 1985, seeking compensatory damages of $200,000, as well as punitive damages of $1,000,000. Two of plaintiff's claims pertained to injuries resulting from defendant's cancellation of plaintiff's policy, claims which plaintiff subsequently dropped. The remaining cause arises out of defendant's refusal to pay the insurance claim related to Williams' theft.

In addition to a general denial of plaintiff's claim, defendant offers four affirmative defenses: 1) Plaintiff failed to file a detailed proof of loss statement; 2) Plaintiff accepted $19,000 in restitution from Linda Williams,[1] an agreement which discharged defendant from any plaintiff claim; 3) Plaintiff agreed not to prosecute Williams in consideration for the $19,000 she had paid, an agreement which bars plaintiff's insurance claim; 4) Defendant's liability for a maximum of $100,000 under the TC insurance policy prevents plaintiff's recovery of the $1,200,000 damages sought.

Williams has filed no less than five affidavits adding, correcting or supplementing her description of the theft and related events, particularly her payment of $19,000 to plaintiff. In four of these affidavits, Williams either explicitly states or suggests that in return for her $19,000 check, plaintiff agreed that she would not face criminal prosecution for theft. In three of the affidavits, Williams describes the payment as restitution for the money or items she stole. However, in Williams' third affidavit, dated January 14, 1986, she denied that the $19,000 check constituted restitution, indicating instead that the check was endorsed to the law firm of plaintiff's attorney Rosen as payment for legal fees. This characterization of the $19,000 "as partial reimbursement of legal, accounting and investigative expenses" is corroborated in an affidavit filed by Rosen.

Williams has stated that since plaintiff first accused her of theft, "Mr. Rosen has been the only person on behalf of Two's Company that I have spoken, corresponded or dealt with...." Rosen's affidavit of January 16, 1986 confirms that he has handled all transactions relevant to this litigation between Williams and plaintiff:

---

1. Since the filing of defendant's answer, Williams has allegedly paid an additional sum of money to plaintiff, raising the total of her payments to about $23,000.

"Everything plaintiff submitted was done by me ... in writing."

## DISCUSSION

### Motion for Partial Summary Judgment

Transamerica's second and third affirmative defenses assert that plaintiff's acceptance of the $19,000 payment from Williams, either as restitution for her theft and/or in return for plaintiff's agreement to forego criminal prosecution, bars plaintiff from collecting on its insurance policy with Transamerica. These defenses are based on the rule that an insured party who settles a claim with a wrongdoer, releasing the wrongdoer from the potential liability arising in a subrogation action brought by an insurer against the wrongdoer, cannot subsequently collect from the insurer. *Aetna Casualty & Surety Co. v. Phoenix National Bank & Trust Co.*, 285 U.S. 209, 214–16, 52 S.Ct. 329, 331–32, 76 L.Ed. 709 (1932); *Atlantic Richfield Co. v. Interstate Oil Transport Co.*, 505 F.Supp. 840, 844 (S.D.N.Y.1981). This rule prevents an insured suffering damage from obtaining a "double recovery" by first collecting a settlement from the wrongdoer, and then proceeding against the insurer on the same claim. Also, by preventing policy collections where an insured party has released a wrongdoer, the rule protects the insurer's ability to place the costs of damage directly on the wrongdoer. *See Cooperman v. Sunmark Industries Division of Sun Oil Co.*, 529 F.Supp. 365, 367–68 (S.D.N.Y.1981); *Scinta v. Kazmierczak*, 59 A.D.2d 313, 316, 399 N.Y.S.2d 545, 548 (4th Dep't 1977).

Plaintiff's motion for summary judgment on defendant's second and third affirmative defenses asserts that Williams' payment of $19,000 was unrelated to any damage resulting from her theft, but instead constituted payment for attorneys' fees or some other service. Plaintiff further argues that Williams' payment of the $19,000 occurred under an "executory accord": a nonbinding agreement which in no way released Williams from an insurer's suit for subrogation. *See Brink v. Killeen*, 48 A.D.2d 823, 823, 368 N.Y.S.2d 547, 549, 550 (2d Dep't 1975) (statement on check that "[e]ndorsement by payee constitutes a receipt and release from the items mentioned on the face of this draft" held "too vague to constitute a binding contract of release").

A court must render summary judgment where "there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). "When conflicting inferences can be drawn from the facts, however, summary judgment is inappropriate." *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir.1979).

Such conflicting inferences may indeed be drawn form the facts submitted in the instant case. If Williams endorsed her $19,000 check to plaintiff as payment for some expense unrelated to her theft, as suggested by her January 14, 1986 affidavit, such a payment would in no way bar plaintiff's insurance claim against defendant. However, if Williams in fact endorsed the $19,000 check as restitution for her theft and in consideration for plaintiff's promise that she would face no further liability for her theft, such a payment would release Williams from any subrogation claim brought by defendant, and accordingly would prevent plaintiff from recovering on its insurance policy with defendant. *See Shepherd v. State Farm Mutual Automobile Insurance Co.*, 607 F.Supp. 75, 76 (S.D.Miss.1985); *Dancy v. State Farm Mutual Automobile Insurance Co.*, 324 F.Supp. 964, 965 (S.D.Ala. 1971) (convenants not to sue held to constitute legally-effective releases barring any subrogation action by insurer). Three of Williams' affidavits support this interpretation concerning the nature of her payment.

Plaintiff's argument that any agreement entered by plaintiff and Williams constitutes an executory accord, which would neither release Williams from a subrogation action nor bar plaintiff's action against defendant, also is insufficiently supported to mandate summary judgment on Transamerica's defenses. In fact, plaintiff's abil-

ity to prove that any agreement with Williams is nonbinding appears questionable, given that Williams already has paid consideration in the amount of $19,000 to plaintiff. *See National American Corp. v. Federal Republic of Nigeria,* 448 F.Supp. 622, 645 (S.D.N.Y.1978), *aff'd,* 597 F.2d 314 (2d Cir.1979). However, the intent of the parties determines whether an agreement constitutes a nonbinding executory accord or a binding contract. *United Nations Korean Reconstruction Agency v. Glass Production Methods, Inc.,* 291 F.2d 168, 172 (2d Cir.1961); *National American Corp. v. Federal Republic of Nigeria,* 448 F.Supp. 622, 643 (S.D.N.Y. 1978), *aff'd,* 597 F.2d 314 (2d Cir.1979). Given the ambiguities raised by Williams' affidavits, a determination of the intent motivating her $19,000 payment to plaintiff must await further explanation at trial.

To summarize, the nature of Williams' $19,000 payment to Rosen may be determined only by weighing the relative credibility of her various affidavit statements, together with any testimony produced at atrial. Summary judgment is particularly inappropriate "where an issue turns on credibility." *Romero v. Union Pacific Railroad Co.,* 615 F.2d 1303, 1309 (10th Cir.1980).

Plaintiff's motion for summary judgment on Transamerica's second and third affirmative defenses is denied.

*Motion to Disqualify Counsel*

Defendant moves to disqualify plaintiff's attorney Rosen from further participation in the instant case, pursuant to Disciplinary Rule 5–102(A) of the American Bar Association Code of Professional Responsibility.

Disciplinary Rule 5–102(A) provides:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation. . . .

Where an attorney has observed or participated in events giving rise to facts disputed at trial, a jury may misinterpret "his questions or summation as testimony conveying his own version" of those events. *United States v. Peng,* 766 F.2d 82, 86 (2d Cir. 1985). Such a misinterpretation could prove extremely prejudicial to the adverse party, "[s]ince as an unsworn witness he [the attorney] would not be subject to cross-examination or explicit impeachment. . . ." *United States v. Cunningham,* 672 F.2d 1064, 1075 (2d Cir.1982). Courts in this circuit thus require disqualification of any attorney who "ought to be called as a witness in the proceeding." *SMI Industries Canada Ltd. v. Caelter Industries, Inc.,* 586 F.Supp. 808, 817 (N.D. N.Y.1984). *Accord MacArthur v. Bank of New York,* 524 F.Supp. 1205, 1208 (S.D.N. Y.1981); *Eurocom, S.A. v. Mahoney, Cohen & Co.,* 522 F.Supp. 1179, 1181 (S.D.N. Y.1981). "[A]ny doubt is to be resolved in favor of disqualification." *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir.1975).

In the instant case, Rosen clearly "ought to be called as a witness" by plaintiff. As discussed above, two of Transamerica's affirmative defenses rest entirely on the nature of Williams' $19,000 payment to plaintiff, or more specifically, to Rosen's law firm. Williams states that since plaintiff first discovered her theft, all of her dealings with plaintiff, including her endorsement of the $19,000 check, have occurred through Rosen. Should Williams testify in favor of plaintiff at trial, stating that the $19,000 payment was unrelated to her theft, Rosen's testimony would provide valuable corroboration on the nature of this payment. Should Williams testify for defendant at trial, stating that her payment constituted restitution for her theft and that she received a release from any action for subrogation, plaintiff would require Rosen's testimony to rebut William's assertion. Finally, if neither party called Williams as a witness, plaintiff could call Rosen as the sole eyewitness on what consideration Williams' received, if any, in return for her payment. Whatever the events at trial, plaintiffs clearly ought to call Rosen as a witness. Disciplinary Rule

5–102(A) thus mandates his disqualification from further representation of plaintiff in the instant case.[2]

Where an attorney should testify on his client's behalf, a disqualification order typically will include any firm currently employing the attorney-witness. *See* Disciplinary Rule 5–102(A); *United States v. Peng,* 766 F.2d 82, 86–87 n. 1 (2d Cir.1985); *Armstrong v. McAlpin,* 625 F.2d 433, 446 n. 26 (2d Cir.1980) (en banc), *vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981). Accordingly, both Rosen and all members of the firm of Milgrim, Thomajon, Jacobs & Lee are disqualified from further representation of plaintiff in the instant case.

*Motions for Sanctions*

 Both plaintiff and defendant move for sanctions pursuant to Fed.R.Civ.P. 11, which authorizes such sanctions where an attorney takes action "to harass or to cause unnecessary delay or needless increase in the cost of litigation." Since defendant has proven successful on its motion to disqualify counsel, plaintiff's sanctions motion is without merit. And although the Court is disturbed by plaintiff's filing of a partial summary judgment motion where the facts are anything but uncontradicted, the Court finds insufficient evidence of the bad faith necessary to justify Rule 11 sanctions. *See Tedeschi v. Smith Barney, Harris, Upham & Co.,* 579 F.Supp. 657, 661 (S.D.N.Y.1984) (Weinfeld, J.), *aff'd,* 757 F.2d 465 (2d Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985).

## CONCLUSION

Plaintiff's motion for partial summary judgment is denied. Rosen and the firm of Milgrim, Thomajan, Jacobs & Lee are disqualified from acting as counsel to Two's Company for the duration of this lawsuit.

Both parties' motions for Rule 11 sanctions are denied.

SO ORDERED.

---

**2.** An attorney-witness may continue to represent his client if "disqualification would work a substantial hardship on the client." Disciplinary Rule 5–102. However, plaintiff has not presented any evidence suggesting that disqualification of Rosen and his firm would work such a hardship.