## The MARTIN COMPANY

### v.

**The UNITED STATES, Defendant, The Goodyear Tire & Rubber Company, The B. F. Goodrich Company, and the Firestone Tire & Rubber Company, Third-Party Defendants.**

### No. 540-56.

United States Court of Claims.
July 16, 1958.

W. Houston Kenyon, Jr., New York City, for plaintiff.

Jones, Day, Cockley & Reavis, Washington, D. C., Kenyon & Kenyon, New York City, Warren S. Ege, Washington, D. C., and Hugh A. Chapin, New York City, were on the brief.

Henry Van Arsdale, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Charles A. Horsky, Washington, D. C., for third-party defendants. John Lord O'Brian, Daniel M. Gribbon, Washington, D. C., Frank E. Barrows, Stanton T. Lawrence, Jr., New York City, Covington & Burling, Washington, D. C., and Pennie, Edmonds, Morton, Barrows & Taylor, New York City, were on the briefs.

MADDEN, Judge.

The plaintiff, formerly The Glenn L. Martin Company, brought this suit against the United States for just compensation in the form of a reasonable royalty for the procurement and use by the United States of aircraft fuel cells and tanks upon which, the plaintiff claims, it had patents. The United States filed an answer and also filed a petition asserting contingent claims against the Goodyear Tire and Rubber Company, the B. F. Goodrich Company, and the Firestone Tire and Rubber Company, asserting that these companies manufactured for the Government the fuel cells and tanks here involved, and that they agreed with the Government to indemnify it against claims made against it for the infringement of patents. The Government says that if the plaintiff obtains a judgment against it for infringement of the plaintiff's patents, it should have judgments over against the rubber companies on their indemnity agreements.

The rubber companies, having been made third-party defendants, filed an answer admitting the manufacture for the Government of the fuel cells and tanks, and the making of the indemnity agreements, but denying the validity of the patents. Their answer also asserted that the Government, by a certain agreement and a certain stipulation with the plaintiff, had waived substantial defenses to the plaintiff's claim and thereby released the third-party defendants from their contracts of indemnity.

The third-party defendants also filed the motion which is now before the court. They point to a contract made on October 1, 1954, between the Government and the plaintiff. That contract was made because the Government had been required to pay substantial amounts as royalties for the use of the fuel cells and tanks on which the plaintiff claimed patents and was proceeding under the

Royalty Adjustment Act of 1942, 56 Stat. 1013, as amended, Oct. 31, 1951, 65 Stat. 710, 728, to obtain reductions and refunds of the royalties, and the parties desired to settle their differences with regard to royalties already accrued or which might accrue in the future.

The contract was long and involved. It granted the Government a royalty-free license for all manufactures ordered on or after September 1, 1955. The parties agreed that the Government had not had a royalty-free license prior to the agreement; that for manufactures ordered before October 1, 1954 but delivered thereafter, the Government should be charged only half royalties; that if the plaintiff collected full royalties from a manufacturer for this period, it should pay half of them over to the Government; that for manufactures ordered between September 30, 1954 and September 1, 1955, the plaintiff would pay over to the Government all of the moneys collected as royalties from manufacturers.

The contract provided that if the plaintiff obtained a judgment against the Government for royalties for the use of the patented inventions, then, to the extent that there should be no contract of indemnity existing on September 30, 1954 or thereafter, in favor of the Government, the plaintiff would not "seek payment" of the judgment.

The plaintiff's petition claims compensation for the period beginning December 28, 1950, which was six years before the filing of the petition, and ending on the effective date of the license granted by the plaintiff to the Government by the agreement of October 1, 1954. From what we have recited above, it appears that the license took effect on manufactures ordered on or after September 1, 1955.

The Government's original answer contained two paragraphs asserting as a defense that it had a license under a procurement agreement dated September 9, 1939, and under subsequent procurement agreements. The plaintiff made a motion to strike this defense, asserting that the Government did not have the right to raise the defense because in the contract of October 1, 1954, it had, as we have seen, acknowledged that it had not had any royalty-free license prior to the one granted in the contract. The Government responded to the plaintiff's motion to strike and insisted upon the validity of its defense. After further memoranda had been filed, the plaintiff and the Government filed a stipulation striking the paragraphs in question from the defendant's answer.

The third-party defendants assert that the Government, by its contract with the plaintiff of October 1, 1954, and by its stipulation striking the defense of a license, has so impaired its ability to defend this suit that the third-party defendants have been released from their contracts to indemnify the Government.

The 1939 and later procurement contracts cited by the Government in its original answer as giving it a license are not before us, and of course we have no opinion as to whether they did, in fact, license the manufactures involved in this suit. They seem to have at least formed a plausible basis for a contention that they did so. In the 1954 agreement the plaintiff insisted that the Government acknowledge that they did not do so, as a consideration for the things conceded and promised by the plaintiff in that agreement. The Government set them up in its original answer, and there was a lively exchange of memoranda as to whether it had bargained away this defense when it made the 1954 agreement. Upon this background, we must assume that the possible defense, which the Government surrendered when it made the 1954 agreement, or when it stipulated to strike the paragraphs from its answer, or both times, was a substantial defense which the Government had no right to surrender without the consent of its indemnitors. Aetna Casualty & Surety Co. v. Phoenix Nat. Bank & Trust Co., 1932, 285 U.S. 209, 52 S.Ct. 329, 76 L.Ed. 709.

The third-party defendants point also to the provision in the 1954 contract that if the plaintiff obtains a judgment, and the Government is not covered by an indemnity agreement with regard to the judgment, the plaintiff will not seek payment of the judgment. They point to other provisions which seem to align the plaintiff and the Government on the same side of the controversy concerning these claimed royalties.

We recognize that the 1954 agreement covered a complicated and elusive subject matter, and was difficult to draft. One of the problems was to make certain that the Government did not, in fact, pay royalties twice on the same purchases. When the Government bought fuel cells and tanks from, for example, one of the third-party defendants, and required a contract of indemnity against liability of the Government to a patent holder for royalties, the seller presumably added a sum to the price to cover the indemnity liability. If the indemnity liability is unenforcible, and the Government pays royalties to the patent holder, the Government has paid twice and the supplier has had a windfall. Hence the Government insisted, in the overall contract of settlement, that it should not have to pay any judgment for which it was not indemnified.

In spite of the possible unjust enrichment of the third-party defendants, we conclude that they have been released from their contracts of indemnity by the contract and the stipulation referred to above.

We do not find it necessary to decide or discuss other arguments presented by the parties.

The motion of the third-party defendants for summary judgment discharging them from liability as indemnitors is granted, and the defendant's petition as to them will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER, and LITTLETON, Judges, concur.