Andrew Wojtowicz, et al., Sandra Wojtowicz, a Minor, by Her Father and Next Best Friend, Andrew Wojtowicz, Joseph Wojtowicz, a Minor, by His Father and Next Best Friend, Andrew Wojtowicz, Pamela Wojtowicz, a Minor, by Her Father and Next Best Friend, Andrew Wojtowicz, and Victoria Wojtowicz, a Minor, by Her Father and Next Best Friend, Andrew Wojtowicz, Plaintiffs-Appellants, v. John W. Sarno, et al., d/b/a Cadillac Heating, Sarn-Oil Burner Supply Co., and Quiet-Heet Manufacturing Corporation, Defendants-Appellees.

Gen. No. 48,917.

First District, Third Division.

November 27, 1963.

Rehearing denied January 2, 1964.

Epton, Scott, McCarthy & Bohling, of Chicago (Bernard E. Epton and Alfred S. Druth, of counsel), for appellants.

Marquard & Hoolehan, of Chicago (Henry J. Marquard, of counsel), for defendant-appellee, Sarn-Oil Burner Supply Company. Hinshaw, Culbertson, Moelmann & Hoban, all of Chicago (John M. Moelmann, Perry L. Fuller and Karl M. Tippet, of counsel), for defendant, Quiet-Heet Manufacturing Corporation.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Mr. and Mrs. Andrew Wojtowicz and Mr. and Mrs. Joseph Wojtowicz owned and occupied a two-story apartment building in Phoenix, Illinois. The first floor apartment was heated with a coal-burning hot air furnace, the apartment on the second floor with an oil stove. In September 1954 they contracted with John Sarno and Joseph Perticara, who were doing business as Cadillac Heating, for the installation of an oil conversion burner in the furnace of their building. The installation, including additional air ducts to provide heat from the basement furnace to the second floor, was completed in October. On January 29, 1955, a fire occurred which the Wojtowiczes charge was caused by the negligent manufacture and installation of the burner. The building was so badly burned that it was condemned.

This action was brought to recover real and personal property damages said to be $62,000 and for

personal injuries in the amount of $190,000. The Quiet-Heet Manufacturing Corp., the maker, Sarn-Oil Burner Supply Co., the distributor and Cadillac Heating, the installer, were made defendants, as were the manufacturers of the component parts used by Quiet-Heet in the assembled unit. These other manufacturers were subsequently dismissed or nonsuited. Cadillac Heating filed a counterclaim against Quiet-Heet. The counter-plaintiff declared that it had installed the burner in a workmanlike manner and that if the fire was not an Act of God it was the result of negligence or breach of warranty on the part of the Quiet-Heet company.

The parties agreed to separate the issues of liability and damages. At the conclusion of the plaintiffs' case on the liability issue the trial court sustained the defendants' motions for a directed verdict and instructed the jury to find the issue for the defendants. An order was entered dismissing the counterclaim. The appeal is from the judgment entered on the directed verdict of not guilty. Cadillac Heating has not contested the appeal and did not appeal from the dismissal of its counterclaim.

The points raised are two: the major point that the court erred in directing verdicts because the plaintiffs' evidence was sufficient as to all defendants to establish a prima facie case; and, a minor point contingent upon the outcome of the first, that the plaintiffs' evidence would have been more than sufficient to establish such a case if the court had not sustained objections to hypothetical questions asked an expert witness.

The test to be applied to a defendant's motion for a directed verdict is whether there is any evidence or reasonable inference arising from the evidence, tending to prove the cause of action alleged in the complaint. On such a motion, in a jury trial, the court does not weigh the evidence or the inferences to be

225

drawn from the evidence. These are questions for the jury and not for the court to consider. The court must decide if the plaintiff's evidence fails as a matter of law to establish the claim. It becomes a question of law only where the evidence is such that all reasonable men would reach the same conclusion or where there is a total failure to prove one or more of the elements necessary to the cause of action. If it appears that all reasonable men might not agree in their conclusions, a jury question is presented. Home Indemnity Co. v. Reynolds & Co., 38 Ill App2d 358, 187 NE2d 274; Lutz v. Chicago Transit Authority, 36 Ill App2d 79, 183 NE2d 579. Therefore, we must consider the evidence which was most favorable to the plaintiffs and the sole question in this appeal is whether such evidence proved or tended to prove the allegations of the complaint.

The plaintiffs' evidence showed that Quiet-Heet did not test either the parts making up the burner nor the completed unit before delivering it to Sarn-Oil Supply Co., and that Sarn-Oil did not test it before delivering it, still crated, to Cadillac Heating at the premises of the plaintiffs. The plaintiffs had constant trouble from the date of the installation until the date of the fire. Frequent complaints were made to Cadillac Heating about the burner and the installation. The burner made a booming noise when it started; oil consumption was 275 gallons every two weeks; oil leaked onto the basement floor; there was excessive smoke, heavy soot came through the registers, and oil fumes were noticeable throughout the building. About two weeks before the fire the fumes were so bad that the local police chief was called. He entered the basement, smelled oil and observed smoke coming from the furnace. He shut off the electricity and gave instructions not to touch the furnace. Cadillac Heating was

226

again informed and a man responded that evening. He opened up the furnace door and used a bundle or two of rags to soak up oil which had accumulated around the fire pot.

The fire on January 29th was preceded by a "terrific noise" and by the house shaking. Upon being awakened by the noise about 1:30 a.m. and smelling smoke, Mrs. Barbara Wojtowicz, who lived on the first floor, went down the inside stairwell to the basement and opened the basement door. She saw flames above the furnace. The home was across the street from the police and fire departments and volunteer firemen quickly responded to the alarm. One fireman testified that before the building went up in flames he saw a cloud of black smoke coming from the basement windows; the smoke smelled of oil; he saw flames shooting out from the furnace door and saw flames above the furnace. He ordered the fuel tank, which was outside the building, turned off. After the fire subsided he went into the basement where the water was between two and a half and three feet deep; he saw the broken door of the furnace lying on the floor five feet away, the ducts disjointed from the top and sides of the furnace and the conversion unit back some six inches from the furnace. The captain of the Harvey, Illinois Fire Department, which assisted the local firemen, testified that when he arrived the fire was burning fiercely in the corner of the building where he later learned the furnace was located and that he smelled fuel oil smoke. He and others said that the greatest damage to the building was in the area above the furnace; he said that from the basement one could see all the way through to the sky.

The defendant, John Sarno, called as a plaintiffs' witness, and John Blair, a professor in mechanical engineering at the Illinois Institute of Technology who

227

teaches combustion theory and its application, told how an oil burner operates: oil is propelled by a pump through a tube to the end of a nozzle which protrudes into the fire box of a furnace; air is simultaneously propelled by a fan, at the same speed, through the tube and out the nozzle; the nozzle vaporizes the oil under pressure of 100 pounds per square inch and mixes it with the air; this very fine, swirling spray is ignited at the nozzle by continuous sparks leaping between two electrodes; the sparks are created by increasing the normal 110 volt electrical alternating current into 10,000 volts by means of a secondary transformer. Electrical devices regulate the amount of fuel going to the nozzle, the quantity of air and the flow of electricity.

Blair, who was qualified by the plaintiffs as an expert, also testified that he had removed the Quiet-Heet burner from the Wojtowicz basement in July 1956, approximately eighteen months after the fire. He examined it in his laboratory and found no evidence of major physical damage. He found that the pump and fan worked and that oil was sprayed from the nozzle at the proper pressure. However, when the ignition system was tested the spark came on for just a few seconds. Repeated attempts failed to produce further sparks. The professor tested the connections, the primary transformer, the secondary transformer and the electrodes in an effort to determine the cause of the ignition failure. He found that the secondary transformer put out 130 volts instead of the 10,000 needed to produce the sparks. He said that if the burner were connected to a furnace, and oil was sprayed out of the nozzle into a fire box with the transformer not delivering the necessary spark, and if later ignition did occur, the vapor would "ignite

essentially in an explosive manner." [The competency of the testimony concerning these tests has not been raised in this appeal except insofar as it relates to the hypothetical questions.]

The witness was then asked the hypothetical questions. Objections to the questions were sustained. If he had been permitted to answer he would have replied (an offer of proof was made) that the ignition system of the burner was defective and that the defect could have caused the fire. The rejection of this proof forms the basis for the plaintiffs' minor point: that there could be no question about a prima facie case having been made if the witness had been permitted to answer. Of course, the plaintiffs would have had a stronger case if the witness had expressed his opinion; but for the purpose of resisting the motions for directed verdicts, their case as this juncture was strong enough to go to the jury without the opinion of the expert witness, and the minor point need not be considered.

There was proof of incomplete combustion of fuel and of faulty ignition. The prevalent smell of oil, the soot coming through the heat ducts, the quantity of smoke, the seepage of oil onto the basement floor, the need for a repairman to mop up the oil in the fire pot just two weeks before the fire, all indicated an accumulation, from time to time, of unconsumed fuel. The smell of fuel oil on the night of the fire, the heavy black smoke and the flames coming from the furnace were evidence that on this night the accumulation was unusually heavy. Delayed ignition could be inferred from the booming noise each time the burner started; and the loud noise on the night of the fire, the flames shooting from the furnace door, the door being found several feet away, the tilted burner and the discon-

nected furnace pipes, all lead to an inference that on this occasion the ignition was delayed longer than usual and that an explosion resulted.

From this evidence and from the background description given by Sarno and Blair about the operation of the burner, we believe that reasonable men would come to the conclusion that when the thermostat in the building called for heat on the early morning of January 29, 1955, when the outside temperature was 14 degrees below zero, the oil pumping system of the burner operated efficiently but the ignition system did not, and that this malfunction caused the explosion and the fire.

There were facts and circumstances in evidence which, resolved most favorably to the plaintiffs, tended to prove the allegations of fault against the defendants in marketing a defective product, or of negligence in not testing, discovering or correcting a serious defect which turned a normally safe product into a dangerous one. The defendants' motions for directed verdicts should have been denied. The judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SCHWARTZ, P. J. and McCORMICK, J., concur.