Mildred Brown McNairy, Administratrix of the Estate of Jeffrey Sawyer, Deceased, Plaintiff-Appellant, v. Kup Realty Company, Inc., an Illinois Corporation, Sanford S. Bower and Evelyn L. Bower, Defendants-Appellees.

Gen. No. 49,875.

First District, First Division.

May 24, 1965.

Herbert P. Veldenz and Seymour Ogden, of Chicago (Herbert P. Veldenz and Vera E. Cuthbert, of counsel), for appellant.

Orner & Wasserman, of Chicago (Norton Wasserman and Joseph B. Lederleitner, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a wrongful death action in which a twenty-one month old child was fatally injured in a fall from an outside rear stairway landing. Plaintiff appeals, contending "the trial court erred in directing a verdict for the defendants and in denying plaintiff's motion for a new trial."

A motion for a directed verdict, either at the close of the evidence for plaintiff or at the close of all of the evidence, presents a single question—whether

there is in the record any evidence which, standing alone and taken with all intendments most favorable to the party resisting the motion, tends to prove the material elements of the case. (Loveless v. Warner, 37 Ill App2d 204, 206, 185 NE2d 392 (1962).) "On such a motion, in a jury trial, the court does not weigh the evidence or the inferences to be drawn from the evidence. These are questions for the jury and not for the court to consider. The court must decide if the plaintiff's evidence fails as a matter of law to establish the claim. It becomes a question of law only where the evidence is such that all reasonable men would reach the same conclusion or where there is a total failure to prove one or more of the elements necessary to the cause of action . . . ." Lutz v. Chicago Transit Authority, 36 Ill App2d 79, 82, 183 NE2d 579 (1962); Wojtowicz v. Sarno, 45 Ill App2d 223, 195 NE2d 218 (1963).

The defendants, Kup Realty Co., Inc., an Illinois corporation, Stanford S. Bower and Evelyn L. Bower, owned and managed a three-story apartment building at 843 East 40th Street in Chicago, Illinois. Willie Belle Sawyer and Walter Lee Sawyer, parents of the decedent, lived in the rear basement apartment of this building, and Mrs. Sawyer's parents lived in the third floor apartment. On July 21, 1959, Mrs. Sawyer was helping her mother take in laundry from the back yard. Jeffrey Sawyer, the decedent, Mrs. Sawyer, and her mother began to climb up the stairway to the third floor apartment. Jeffrey, then twenty-one months of age, fell from the second floor landing. He landed on the sidewalk below and died from the injuries received.

Plaintiff's second amended complaint alleges, in part, that "the floors and porches in the rear of said building are connected with each other by means of common staircases . . . under the control of the defendants

. . . ." It is further alleged "[t]hat the defendants, and each of them, were then and there guilty of one or more of the following acts of negligence or omission which contributed to the injury and death of plaintiff's intestate: a. . . . failed to provide a safe railing and bannister on said common stairway. b. . . . used a single diagonal rail which was about 14 inches from the stairs. c. . . . failed to properly enclose said stairway with rails and posts of a safe type. d. . . . allowed said railing enclosing said stairway to be and remain in a dangerous condition." The defendants specifically denied these allegations in their answer. The plaintiff prayed for $25,000 in damages, and costs.

The only testimony in this case was given by the decedent's mother, Willie Belle Sawyer. On direct examination, she testified that she lived with her husband and their two sons in the basement apartment in the instant premises for two years prior to this occurrence. There were a total of 13 or 14 children under the age of ten years living on the premises. On the afternoon of July 21, 1959, she was helping her mother take in the laundry from the back yard. Jeffrey began to climb up the rear outside stairway. He was followed by Mrs. Sawyer, who was carrying an armful of clothes, and who was followed by Mrs. Sawyer's mother. They were proceeding to Mrs. Sawyer's mother's third floor apartment. When Jeffrey reached the second floor landing, Mrs. Sawyer testified that he "turned to look around at me, and he turned to— turned back around and he—he stumbled, and before I could get to him, he fell and went rolling through that—that opening on the porch."

On a photograph, identified as "Joint Exhibit #1," Mrs. Sawyer marked the place from which the decedent fell and the place where she found him lying on the ground. She stated that the railing under which the decedent rolled was in the same condition in 1957,

when the Sawyers moved into the instant premises, as it was at the time of the occurrence.

The plaintiff contends that the directed verdict entered in favor of defendants was improper because, under the foregoing evidence, "the railing was not adequate to provide proper protection to those using it," citing Loveless v. Warner, 37 Ill App2d 204, 209, 185 NE2d 392, or, at least, a question for the determination of the jury existed, that is whether the railing created a reasonably foreseeable dangerous condition to children of tender years, citing Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836 (1955). The plaintiff argues that "[w]here a common means of ingress and egress is protected by a single railing with one horizontal guard rail above the midpoint of the railing and stairway and there are 13 or 14 children under the age of 10 years on the premises it is reasonably foreseeable that a dangerous condition exists insofar as children of tender years are concerned."

As was said in Loveless v. Warner, 37 Ill App2d 204, 209, 185 NE2d 392:

"We must first determine the duty resting upon a landlord with respect to a common porch and railing. Most of the cases dealing with railings, porches and stairs discuss the question as to whether the landlord permitted them to deteriorate and failed to make proper repairs. However there is another duty resting upon the landlord, and that is that a railing which is intended to protect the persons using the porch from falling from it must be adequate for that purpose. . . . Colbert v. Holland Furnace Co., 333 Ill 78, 164 NE 162."

In Loveless v. Warner, the court held that the evidence adduced at the trial was sufficient to raise "the question as to whether this was an adequate railing for the protection of the persons invited to use it.

This is a question which must be decided by the jury and cannot be disposed of by the court on a motion for a directed verdict at the close of the plaintiff's testimony." However, the evidence in the instant record is not sufficient to require the question of the adequacy of the railing and the possible negligence of the defendant in providing such a railing to be submitted to the jury. Although the second amended complaint alleged that the defendants "negligently used a single diagonal rail which was about 14 inches from the stairs," this was specifically denied by defendants in their answer, and there was no testimony at trial as to the construction and condition of the bannister and railing, the height of this "diagonal rail" from the floor of the landing, whether this type of railing violated any city ordinance (O'Donnell v. Barach, 1 Ill App2d 157, 116 NE2d 912 (1953)), what types of bannisters and railings are customarily used on rear landings and stairways, any difference in the "safety" of the instant railing from that of the multitude of other railings in use (Rogers v. Sins, 349 Ill App 353, 110 NE2d 643 (1953)), whether the defendants had actual or constructive notice of the alleged inadequacy of the railing, and whether any complaints had been made to the defendants by the decedent's parents, or any of the other tenants, as to the "dangerous condition" alleged to have been created by this railing.

As defendants argue, the plaintiff introduced "no evidence that any board of the railing was decayed, loose or otherwise defective. Neither is there any evidence that the railing broke or fell away when touched or used as a railing."

█ The purpose of railings on outside stairways and landings is a "guard or protection" to those lawfully using the stairways and landings. They are intended to be used for the support and safety of such persons climbing the stairs and using the landings in

468

a normal, reasonable, and usual manner. (Rosseu v. Goodridge, 185 Ill App 164 (1914); Pamler v. Byrd, 131 Ill App 495 (1907).) Such railings and bannisters, however, are not intended to completely enclose stairways and landings with an impenetrable barrier.

The landlord's responsibility is not increased because a small child rolls under a railing. The court in Rogers v. Sins, 349 Ill App 353, 110 NE2d 643, decided that a verdict should have been directed for the defendant owner in an action to recover damages for injuries suffered by a two and one-half year old girl when she fell out of a hall window after pushing through a screen. The court said (p 357):

> "It may be that screens have some restrictive effect, if the child is not too aggressive, but they are not customarily designed to withstand all tampering, and leaning or falling against them. . . . The law recognizes that a child of tender age following its natural instincts, can find an infinite variety of ways of injuring itself. Based on that inherent disposition, the rule is that such a child is not chargeable with contributory negligence. Having adopted that premise, the law cannot consistently go to the opposite extreme and presume negligence on the part of the owner of premises every time a child finds a way to get hurt thereon. Plaintiff's argument would not permit the use of ordinary, usual and customary construction and arrangement of premises where there are children. The landlord would have to protect them from harm at his peril."

See also Schiavone v. Falango, 179 A2d 622, 625 (Conn 1962); Harrison v. Mortgage Inv. Co., 58 F2d 881 (1932).

We believe that plaintiff's evidence adduced in this case, taken with all the reasonable inferences in favor

of plaintiff, demonstrates, as defendants contend, that "there is no submissible jury question and the court properly held the defendants not negligent as a matter of law."

In view of the above, it is not necessary for us to discuss the issue of possible contributory negligence of one of the beneficiaries under the Wrongful Death Act.

For the reasons given above, the order of the trial court directing a verdict for defendants is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.