**William D. BEETLER, d/b/a Klein's Beauty Salon, and Sandra Roehm Moore, Plaintiffs-Appellants,**

v.

**SALES AFFILIATES, INC., a Corporation, Defendant-Appellee.**

**No. 17812.**

United States Court of Appeals, Seventh Circuit.

Aug. 19, 1970.

John E. Cassidy, Jr., Cassidy, Cassidy, Quinn & Lindholm, Peoria, Ill., for plaintiffs-appellants.

Lyle W. Allen, Heyl, Royster, Voelker & Allen, Peoria, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, CUMMINGS, Circuit Judge, and GRANT, District Judge*.

GRANT, District Judge.

This is an appeal from a directed verdict in favor of the defendant, Sales Affiliates, Inc. The facts leading to this appeal are as follows: On March 14, 1956, Joanne Horan was a patron in Klein's Beauty Salon in Peoria, Illinois, to receive a permanent wave. The salon, operated by these plaintiffs, William D. Beetler and his employee, Sandra Roehm Moore, provided beautician services for Mrs. Horan. In the course of receiving her permanent wave, Mrs. Horan received burns and other injuries to her hair and scalp for which she filed suit in the Circuit Court of Peoria County claiming damages from plaintiffs, Beetler and Moore. Judgment was granted in favor of Mrs. Horan and upon appeal was affirmed by the Appellate Court for the Third District of Illinois. A petition for further leave to appeal was denied by the Supreme Court of Illinois, following which Beetler and Moore paid the judgment with interest and costs and, thereafter, on May 20, 1966, plaintiffs Beetler and Moore filed this action in the Circuit Court of Peoria County against defendant, Sales Affiliates. Plaintiffs claimed that Sales Affiliates had manufactured the product used on

---

* Chief Judge Robert A. Grant is sitting by designation from the United States District Court for the Northern District of Indiana.

Mrs. Horan's hair, "Lustron Peer No-Cap" [1], that the product was inherently dangerous, and was applied to Mrs. Horan's hair in accordance with the manufacturer's instructions, thus making Sales Affiliates liable to Beetler and Moore in the amount of the verdict entered against them in favor of Mrs. Horan, together with attorneys' fees, expenses, and interest, based upon the theory of indemnification.

This action was removed by Sales Affiliates to the United States District Court at Peoria. The district court granted a motion to quash service of process and dismissed the case based upon plaintiffs' failure to show minimal contacts with the State of Illinois so as to obtain process over Sales Affiliates, but this court reversed (Beetler v. Zotos, 388 F.2d 243, 7th Cir., 1968) and remanded. This case then came to trial on April 1, 1969, in the United States District Court for the Southern District of Illinois, Northern Division.

After the presentation of all of plaintiffs' evidence, a motion for directed verdict in favor of the defendant, Sales Affiliates, was granted. It is from this directed verdict that Beetler and Moore appeal.

Plaintiffs present us with three issues: (1) Whether the district court erred in its determination that there was nothing presented to sustain the allegation that the product of Sales Affiliates was in any way defective; (2) whether the district court's interrogation of the plaintiff Moore was error; and (3) whether it was error for the district court to allow defendant's counsel, in his opening statement, to read from the appellate opinion of the prior state court action by Mrs. Horan.

It is plaintiffs' first contention that the permanent wave solution used on Mrs. Horan's hair was defective, thus making defendant liable to plaintiffs through indemnification for its product under a strict liability theory. In support of this contention, plaintiffs state that (1) the permanent wave package remained sealed from the time of manufacturing and packaging by the defendant until the wave was used on March 14, 1956; (2) at the time of its use on Mrs. Horan's hair, "a pungent, stronger odor and stinging was noted by Mrs. Horan, [more] that she had ever noted on the numerous previous occasions when she received cold waves with similar products"; (3) the permanent wave was applied the same way as had been done before; (4) Mrs. Horan had no known allergies or other scalp difficulties on March 14, 1956; and (5) defendant did not require any type of pre-use skin test.

For the following stated reasons, we find that the district court did not err in granting a directed verdict for defendant:

1. The theory of products liability or strict liability does not impose upon a manufacturer liability for all harm resulting from his product under any and all circumstances. Rather, the product must be shown to be defective for its intended use. Further, the defect must render the product unreasonably dangerous. Suvada v. White Motor Company, 32 Ill.2d 612, 210 N.E.2d 182 (1965). This latter requirement takes into account those products, such as hair dyes and permanent wave solutions, that have both utility and danger. It is well known that permanent wave solutions can never be made completely safe for all users and can cause injuries for many reasons other than a defect in the product. Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841 (5th Cir., 1967). Yet, this is not to say that a defect in a product cannot be proven by circumstan-

---

1. Upon the trial of this action in the Circuit Court of Peoria County in April of 1969, and over the objections of Sales Affiliates, Moore and Beetler were allowed to amend their complaint against Sales Affiliates to claim that the product used upon Mrs. Horan's hair had not been "Lustron Instant-Peer Wave", as had been alleged in all prior proceedings, but was instead a product known as "Lustron Peer No-Cap".

tial evidence, Wojtowicz v. Sarno, 45 Ill. App.2d 223, 195 N.E.2d 218 (1963), for the very difficulty of proving a defect in a product requires reasonable inferences to be drawn from the evidence. 2 Frumer & Friedman, *Products Liability* § 16A(4) (e) (1968).

In the case at bar there is no evidence of a fault in the production of the permanent wave solution, nor is there any evidence of a foreign substance being found in the solution. Lacking any such positive evidence, we are faced with the issue of whether, from the evidence produced in the district court, a reasonable inference could be legitimately drawn from which the fact finder could rationally infer that injury was caused by a defect in the product. We agree with the district court "that there is no proof in this record that the product of this defendant was in any manner defective at any time material to this case."

The evidence shows first that the beauty operator, Sandra Roehm Moore, used a liquid neutralizer when in fact "Lustron Peer No-Cap" instructions called for a powder neutralizer; second, that she did not ask Mrs. Horan whether she had experienced an allergic reaction of some kind as required by the instructions; and, third, that contrary to instructions she did not rinse with water the excess solution which dripped onto Mrs. Horan's neck. We agree with the district court "that the product was not used strictly in the manner intended by the manufacturer." We find this evidence of misuse to be a substantial negating factor in proof of any defect since method of application may often produce injuries in cases such as this. With this evidence of misuse, along with all the other evidence or lack of evidence before the district court, we do not believe any reasonable inferences could be legitimately drawn to evidence a defect in defendant's product.

The issue of whether Moore's misuse of the permanent wave solution affects plaintiffs' recovery through indemnifica-

tion need not be reached here since we find a failure of proof. There were in fact no reasonable inferences evidencing a defect in the permanent wave solution.

2. Plaintiffs allege it was prejudicial error when the district court examined the plaintiff Moore on the witness stand. Basically, the court questioned Moore concerning two exhibits which were being offered into evidence, (Plaintiffs' Exhibit 5—"Permanent Wave Record Card", and Plaintiffs' Exhibit 6—"Report of Sandy Roehm"). The court asked questions dealing directly with the exhibits being offered. There is no doubt that in the federal system, a trial judge, in aid of truth and in furtherance of justice, may question a witness in an impartial manner. United States v. Miller, 395 F.2d 116 (7th Cir., 1968) cert. denied 393 U.S. 846, 89 S.Ct. 132, 21 L.Ed.2d 117. In view of the exhibits being offered and the relevant questions thereto by the trial judge, we do not find any impropriety in the questions asked.

3. As a final issue, plaintiffs allege it was error for the district court to allow defendant's counsel, in his opening statement, to read from the appellate opinion in the prior state court action won by Mrs. Horan. Plaintiffs contend that before that case could be binding upon them in this action, the entire state court record would have to be made part of the record. Under the general rules governing the conclusiveness of judgments, the indemnitee (plaintiffs in the case at bar), in an action to recover from the indemnitor (defendant in the case at bar) the amounts paid in satisfaction of a judgment obtained against him by an injured person, is bound by all findings without which the judgment could not have been rendered. Shell Oil Company v. Foster-Wheeler Corporation, 209 F.Supp. 931 (E.D.Ill., 1962). Such is the general rule, 24 A.L.R.2d 329.

The record in the district court shows that defendant's counsel in his opening statement referred to the find-

ings of the appellate court when plaintiffs' counsel objected. Defendant's counsel conciliated by stating he was going "to make it (appellate opinion) part of the record" and then agreed to read directly from the appellate court's opinion. In view of the rule in Shell Oil Company v. Foster-Wheeler Corporation, *supra,* plaintiffs can have no complaint against the judgment of the appellate court being used in the district court, since they were in fact bound by that judgment in this action.

The judgment is affirmed.