AMERICAN EXPORT ISBRANDTSEN
LINES, INC., as owners of the S/S EX-
PORT AMBASSADOR, Plaintiff,

v.

The UNITED STATES of America,
Defendant.

No. 69 Civil 831.

United States District Court,
S. D. New York.

Jan. 9, 1975.

Haight, Gardner, Poor & Havens, New York City, for plaintiff; James M. Estabrook, Lennard K. Rambusch, Stephen R. Remsberg, New York City, of counsel.

Paul J. Curran, U. S. Atty., Gilbert S. Fleischer, Atty. in Charge, Admiralty & Shipping Section, U. S. Dept. of Justice, New York City, for defendant; Janis G. Schulmeisters, New York City, of counsel.

## OPINION

## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

This is an action by plaintiff to recover from defendant United States of America the sum of $12,333, a fine imposed by the Italian courts upon plaintiff for its failure to pay customs duties upon a shipment of tobacco and cigarettes consigned by defendant to the United States Naval Support Activity and intended for use by NATO forces in Italy. The shipment was carried by plaintiff's vessel SS Export Ambassador from the United States and discharged to the United States Naval Support Activity at a Pier in Naples, Italy, on October 11, 1960. The shipment was stolen by persons unknown while being removed to a United States Naval warehouse by longshoremen paid by the United States Navy.

The Status of Forces Convention of the NATO nations provides that no duty shall be levied on goods destined for NATO forces if the Armed Forces unit receiving them files a NATO customs declaration in proper form.[1] Such a declaration had been submitted prior to the vessel's arrival at Naples, but no customs billetto or customs bill was issued by the Italian authorities, presumably because the goods had disappeared.

Almost four years after the out-turn of the shipment the Italian Customs Authority indicated to plaintiff that it intended to levy a customs fine with respect to the shipment. Thereafter, at the instance of the plaintiff, the United States Naval Support Activity submitted to plaintiff a letter dated April 28, 1964, acknowledging receipt of the shipment prior to its theft.

In May of 1964, the Italian Customs Authority served upon plaintiff's agent at Naples, one Dresda, a notice demanding payment of customs duties on the shipment of tobacco and cigarettes. Dresda filed an objection with the Tribunal of Naples on January 9, 1965. After a trial, judgment was entered against plaintiff on September 29, 1966 and a fine of $12,333 imposed. On appeal the judgment was affirmed on May 17, 1967, by the Italian Court of Appeals at Naples. Plaintiff did not appeal to the Italian Supreme Court and paid the customs fine on September 21, 1967. Plaintiff now seeks reimbursement from the United States of America for the amount of the fine, plus interest and costs, as well as its legal costs in the Naples litigation.[2]

Plaintiff bases its claim upon an alleged express contract of indemnity with the United States or, in the alternative, upon an implied obligation to indemnify plaintiff. Defendant, in resisting plaintiff's claim for reimbursement of the fine and expenses, contends that it is exempt under Article XI(4) of the NATO Status of Forces Agreement from payment of customs duties on the goods for its NATO forces in Italy; that the contractual provision upon which plaintiff

[1]. Convention on Status of Forces of the North Atlantic Treaty Organization, Article XI(1)(4), June 19, 1951 [1953] 4 U.S.T. 1792, 1812–14.

[2]. Suit was originally instituted in the United States Court of Claims. Upon the motion of the United States, the case was transferred to this court on the ground that it was maritime in nature. 28 U.S.C. § 1506 (1970); 46 U.S.C. § 742 (1970); Matson Navig. Co. v. United States, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336 (1932).

relies does not cover the instant situation; and finally, that the imposition of the customs fine on plaintiff was due entirely to its own fault.

I

█ The claim of an express contract of indemnity is based on Article 8 of Space Charter Contract MST 80, entered into between plaintiff and defendant on July 1, 1950, pursuant to which the shipment in question was made:

"ARTICLE 8. *Receipt.*

(a) The Master shall sign a manifest or receipt acknowledging receipt of the cargo in apparent good order and condition or he shall note *specifically* thereon any apparent damage to or shortage of such cargo or any other specific exception to the cargo as listed on the manifest or receipt.

(b) Any receipt signed by or on behalf of the Master shall be without prejudice to the terms, conditions and exceptions of this contract and subject to all of them. The Government hereby agrees to indemnify and hold harmless the Contractor, the Master, and the Vessel of and from all consequences or liabilities that may arise from any irregularity in the papers supplied by the Government."

Plaintiff argues that in order to secure the NATO customs exception the Naval Support Activity was required to comply with procedures prescribed by the Italian Customs Authority and that this could not be done because the goods were stolen before they could be delivered to a warehouse on the pier. There Italian customs officers physically check the cargo against the ship's manifest before issuing a customs bill evidencing that a shipment is entitled to the customs exemption. Although, as already noted, a NATO customs declaration containing a list of the goods had been filed prior to the vessel's arrival, no customs bill was issued. Plaintiff asserts that

the defendant's failure to obtain the customs bill was the reason it was held liable for the duty and contends this was an "irregularity. in the papers supplied by the Government" within the meaning of Article 8 of the Space Charter Contract. This argument disregards the explicit words upon which plaintiff relies and the contractual context in which they are set. It assumes that papers were delivered contrary to plaintiff's contention that defendant failed to produce the customs bill. Plaintiff inferentially concedes this when it states that the language of the Article "clearly invisioned [sic] . . . an obligation on the part of the defendant to indemnify the plaintiff for liabilities due to irregularities in *and omissions to produce* any papers required to be issued or processed by the defendant regarding cargo shipped aboard plaintiff's vessels."[3] Only by adding, as plaintiff has, the emphasized words "and omissions to produce" to the last sentence of Article 8 can plaintiff's contention be upheld. In the absence of those words, the sentence as set forth in the contract provides for indemnity in those instances where plaintiff has suffered a loss due to an irregularity contained in papers actually supplied by the government, such as miscounts, improper listings, misdescription, or similar errors. It would be a distortion of language to apply a contractual provision that deals with "papers supplied by the Government" to a situation where plaintifff's claim is that the government failed to supply papers. Moreover, the last sentence of Article 8 cannot be separated from the remainder of the Article. It deals with the manifest or receipts supplied by the government for goods to be shipped by the carrier. The indemnity clause that follows refers to this class of documents, not to customs bills issued by the country to which the goods are shipped. Plaintiff does not contend that there was an irregularity in the manifest.[4]

3. Plaintiff's post trial brief, p. 27 (emphasis supplied).

4. Plaintiff does assert that the customs bill was not issued for the stolen goods because

■ Plaintiff, in its effort to support its claim of an express indemnity obligation, invokes the traditional rule of construction that contract language is construed most strongly against its drafter. That maxim only applies, however, where the contract language is ambiguous—where it is susceptible of two reasonable and practical interpretations.[5] The contract clause here at issue is unambiguous and lends itself to only one reasonable construction. The interpretation advanced by plaintiff would distort the normal meaning of the words used. Plaintiff presented no evidence that the intent of the parties with respect to Article 8 was other than indicated by a plain reading of its language.[6]

## II

The plaintiff alternatively contends that it is entitled to indemnity upon (1) a contract implied in fact based upon the relationship between the parties, or (2) a contract implied in law, or a quasi contract, based upon equitable principles.[7]

■ A contract implied in fact, as distinguished from one implied in law,[8] has been defined as an obligation "arising from mutual agreement and intent to promise but where the agreement and promise have not been expressed in words."[9] In order to sustain plaintiff's claim under this theory, the court would have to find an implied promise by the United States to reimburse plaintiff in the event it was called upon to pay customs duty on the cargo. But there is no reasonable basis upon which to imply a promise to pay. The cargo was intended for NATO forces in Italy and as such was exempt from customs duties. Clearly the parties never contemplated that, contrary to the NATO Convention, the Italian authorities would impose a duty with respect to a stolen shipment. The

the Navy failed to clear the manifest with the Italian Customs Authority upon arrival at Naples. However, there is an issue about this because the customs declaration that was filed contains as an attachment an abstract of the ship's manifest. (Berlingieri deposition, p. 36.) Additionally, it appears that the ship's manifest was delivered by the master of the vessel to the Customs Authority. (*Id.* at 35.) Plaintiff acknowledges that "[t]he only testimonial conflict introduced to this court concerns what was, or should have been presented, to the Italian Courts." (Post trial brief, p. 31.) A finding is warranted that the manifest contained a listing of the ship's entire cargo, including the stolen goods. (*Id.* at 36, 44.) But even assuming arguendo that the Navy failed to clear the manifest with the Customs Authority upon the delivery of the shipment, this was a failure to present the manifest for clearance, not an irregularity in the manifest. In any event, plaintiff has failed to sustain its burden of proof on this claim. Berlingieri, its Italian counsel, admitted he merely assumed that the manifest was never cleared and no effort had been made to ascertain whether or not it had been cleared. (Berlingieri deposition, pp. 36–38, 62–64.)

5. United States v. Seckinger, 397 U.S. 203, 210–211, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970). *See also* Porello v. United States, 94 F.Supp. 952 (S.D.N.Y.1950).

6. Defendant called as a witness a Navy official who did not participate in the drafting of Article 8 or in the negotiation of the contract, but who, in terms of experience with the clause in question and his general experience, gave his opinion of the scope of the provision. However, since the court holds that the meaning of the provision was unambiguous, it did not consider his testimony.

Defendant also contends that any dispute as to the scope of Article 8 is subject to Article 19 of the contract, which provides for a mandatory administrative procedure of "any dispute concerning a question of fact arising under this contract." The differences between the parties, however, center about issues of law, not of fact. In any event, the determination that the indemnity provision of Article 8 is inapplicable in the instant situation renders defendant's contention moot and discussion thereof unnecessary.

7. Restatement of Restitution § 1 (1937); Krisel v. Duran, 303 F.Supp. 573 (S.D.N.Y. 1969), aff'd on opinion below, 424 F.2d 1367 (2d Cir.), cert. denied, 400 U.S. 964, 91 S. Ct. 367, 27 L.Ed.2d 384 (1970).

8. United States v. Minnesota Mutual Inv. Co., 271 U.S. 212, 217, 46 S.Ct. 501, 70 L. Ed. 911 (1926); Merritt v. United States, 267 U.S. 338, 340–341, 45 S.Ct. 278, 69 L. Ed. 643 (1925).

9. 1 Williston, Contracts § 3 at 11 (W. Jaeger ed. 3d ed. 1957).

defendant's expert on Italian law testified he knew of no precedent where the United States Navy was charged with customs duty for a shipment coming in under the NATO Convention. It would be an unwarranted exercise of judicial inventiveness, lacking in logic or common sense, to find an implied agreement by the Navy to reimburse the plaintiff for a customs duty which the Navy knew it was not required to pay, which should not be imposed under the terms of the NATO Convention, and which had never been imposed previously by the Italian customs authorities.[10]

Insofar as plaintiff seeks to impose liability upon the defendant based upon a contract implied in law, equitable considerations arising out of the relationship of the parties must appear. To recover upon such a theory, plaintiff must show that the fine imposed was the fault of the government and that it is unfair and inequitable that plaintiff not be reimbursed. Plaintiff has made no such showing.

■ An indemnitee in his action to recover from the indemnitor the amounts paid in satisfaction of a judgment obtained against him is bound by all findings without which the first judgment could not have been rendered.[11] In upholding the decision of the lower tribunal to impose the customs fine on plaintiff, the Italian Court of Appeals stated that, to avoid paying the duty, plaintiff "not only should have completed the customs declaration pertaining to the transported goods . . . and, prior to giving order to unload, awaited customs inspection . . . but [also it] should have had in [its] possession . . . the 'customs bill' . . . ." Thus the Italian court indicated that the plaintiff was liable for the customs fine because of its own failure to follow the proper procedure.

Plaintiff argues that a 1958 Naples customs directive set up a special procedure for obtaining the NATO Convention exemption and that only the Navy could have presented the goods to the customs authorities to secure duty-free clearance. Thus, plaintiff continues, the procedure it followed of unloading the cargo and delivering it to the Navy without awaiting customs inspection was proper. It is questionable that plaintiff's interpretation of the customs directive is correct. In any event, plaintiff brought the directive to the attention of the Italian Court of Appeals, which nonetheless ruled that the procedure followed by plaintiff was incorrect in that, among other matters, the master of the vessel, prior to giving the order to unload, failed to await customs inspection and properly clear the vessel.

Moreover, plaintiff has not established that the Navy did not file the necessary papers with customs, primarily because most of the customs documents related to the shipment were destroyed in 1965.[12]

10. Thus, this case is readily distinguished from such cases as Alliance Assurance Co. v. United States, 252 F.2d 529 (2d Cir. 1958) and C. F. Harms Co. v. Erie R. R., 167 F.2d 562 (2d Cir. 1948) where goods were lost or disappeared while in the temporary possession of the United States. The court found those situations to be bailments implied in fact, with an implied promise to redeliver the goods. As the court stated: "It would be the normal and expected action on the part of the bailee to promise to use due care, and no judicial inventiveness is required to imply one." Alliance Assurance Co. v. United States, 252 F.2d 529, 532 (2d Cir. 1958). Moreover, assuming arguendo that the evidence warranted a contract implied in fact that the Navy agreed to reimburse plaintiff for customs duties imposed upon it resulting from the Navy's lack of care, plaintiff has not shown that such lack of care caused the customs fine, as is discussed above.

11. Beetler v. Sales Affiliates, Inc., 431 F.2d 651, 654 (7th Cir. 1970); Warren Petroleum Corp. v. J. W. Green Contractors, 417 F.2d 242, 245–246 (5th Cir. 1969); Fidelity & Cas. Co. v. Federal Express, 136 F.2d 35, 39 (6th Cir. 1943); American Surety Co. v. Singer Sewing Mach. Co., 18 F.Supp. 750, 753 (S.D.N.Y.1937).

12. Under Navy disposal procedure documents are destroyed as a matter of course at periodic intervals; here, when the documents were five years old.

The documents were available in 1964 when plaintiff was notified that it was being charged with the duty, but plaintiff's counsel made no attempt to examine them. Significantly, the complaint in this case alleges that solely because defendant refused to file the NATO customs declaration plaintiff was held liable for the customs duties and fines. Factually this is incorrect. Plaintiff has stipulated that such a document had been submitted prior to the vessel's arrival.

In sum, while it is undisputed that the Navy had possession of the shipment when it was stolen, plaintiff has not shown that the government was obligated to pay a customs duty for the shipment because it was stolen before clearing customs, or that any act or omission for which the government was responsible was the reason that the customs duty was imposed upon the plaintiff. The government in no respect became the beneficiary of the customs duties imposed upon plaintiff, nor did it engage in any unfair conduct which, under equitable principles, would require it to re-fund the moneys to the plaintiff.[13] To the contrary, as previously noted, the decision of the Italian Court of Appeals establishes that the plaintiff was charged with the customs duty because of its failure to follow the required procedure.[14]

### III

 Finally, there is an additional reason for not requiring the government to indemnify plaintiff, whether by virtue of an obligation based upon an express contract of indemnity or a contract to indemnify implied in fact or law. An indemnitee has a duty to act reasonably under all the circumstances so as to protect the indemnitor against liability.[15] Plaintiff failed to take action in the course of the Italian litigation that may have avoided the imposition of the customs duties on it or the United States. Although it had the letter of April 28, 1964 which it had requested in which the Navy admitted that it received the merchandise before it had been stolen, plaintiff failed to submit this to the Italian courts.[16] Plain-

---

13. Restatement of Restitution § 1 (1937); Krisel v. Duran, 303 F.Supp. 573 (S.D.N.Y. 1969), aff'd on opinion below, 424 F.2d 1367 (2d Cir.), cert. denied, 400 U.S. 964, 91 S. Ct. 367, 27 L.Ed.2d 384 (1970). Plaintiff's reliance upon Canada S. S. Lines v. Inland Waterways Corp., 166 F.2d 57 (5th Cir. 1948), is misplaced. There the defendant, *contrary to plaintiff's express instructions to clear cargo on a "transit entry,"* which would make the goods duty free, cleared it under a consumption entry resulting in the imposition of customs duties. So, too, United Nations Children's Fund v. S/S Nordstern, 251 F.Supp. 833 (S.D.N.Y.1966), cited by plaintiff, is inapposite since indemnification there was based upon an unreasonable deviation contrary to the shipper's directions.

4. This disposition makes it unnecessary to consider the defendant's contention that, under 28 U.S.C. § 1346 (the Tucker Act) and 28 U.S.C. § 1491, the United States may not be sued on a contract implied in law but only on one implied in fact. United States v. Minnesota Mutual Inv. Co., 271 U.S. 212, 217, 46 S.Ct. 501, 70 L.Ed. 911 (1926); Knight Newspapers, Inc. v. United States, 395 F.2d 353, 357 (6th Cir. 1968); C. F. Harms Co. v. Erie R. R., 180 F.2d 850 (2d Cir. 1950); Gallant v. Waterman S. S. Corp., 90 F.Supp. 495, 496 (S.D.N.Y.1950). This case, however, as distinguished from the foregoing, is not based on either of those statutes but on the Suits in Admiralty Act, 46 U.S.C. § 742. Whether that difference is sufficient to uphold jurisdiction against the government need not be decided in view of the disposition made herein and is left for another day.

15. General Ins. Co. of America v. Fleeger, 389 F.2d 159 (5th Cir. 1968); American Cas. Co. v. Idaho First Nat'l Bank, 328 F.2d 138, 142–143 (9th Cir. 1964); Hiern v. St. Paul-Mercury Indemn. Co., 262 F.2d 526, 528–529 (5th Cir. 1959).

16. Proof of the delivery of the goods to the Navy before their theft was a matter of significance. A reading of the Berlingieri deposition on this issue, as well as the record before the two Italian courts, suggest that it was not properly presented. The Italian "Court of Appeals held, firstly, that the goods in question were never received by the navy, [sic] and moreover, that the navy did not file the necessary application for the import of the goods." Berlingieri deposition,

tiff's Italian counsel did not attempt to ascertain what customs documents, if any, had been filed by the Navy in regard to the missing cargo. No evidence of the procedures that were followed during the discharge of the cargo, which included the stolen goods with respect to their clearance, was ever presented to the Italian court. During the entire course of the litigation plaintiff never requested a specific document from the Navy pertinent to the issues before the Italian courts. Most significantly, plaintiff failed to bring the Navy into the lawsuit, which expert witnesses on both sides testified was permissible under the applicable law. The court finds upon the entire record that plaintiff failed to notify the Navy of the Italian litigation until after the decision of the lower tribunal and failed to request any witnesses or evidence from the Navy.[17]

■ Needless to say, the parties are in sharp dispute as to whether these or any other measures would have changed the outcome of the Italian court's decision. Italian law in this area is not entirely clear. Apparently there have been no other cases in the Italian courts substantially similar to this one concerning a shipment by the United States government entitled to the NATO customs exemption. Even if there were, an accurate prediction as to what the decision would have been if any of the above actions were taken or matters presented to the Italian courts would be hazardous, since Italian law does not accept the doc-

trine of *stare decisis*. Nevertheless, no matter what the state of Italian law, plaintiff, confronted with a demand for a customs duty as to which it knew defendant was entitled to claim exemption, was under a duty to protect the Navy's interest by taking all reasonable steps. This included submitting to the Italian courts the Navy's letter, ascertaining whether customs clearance had been obtained on the missing shipment, obtaining the testimony of witnesses who were knowledgeable of the material facts, and seeking the Navy's assistance and/or its intervention in the litigation. Additionally there is no adequate explanation for plaintiff's failure to exhaust all available avenues of appeal. This is not to say that a party loses its right to be indemnified because hindsight may show possible errors of conduct or judgment in resisting the claims advanced against the indemnitee, especially in instances where the alleged indemnitor has been notified of the trial and invited to participate.[18] It is to say that a party seeking indemnity is under an obligation to take reasonable measures in the course of that litigation to protect the interests of the party from whom it seeks indemnification.[19] This court finds that the plaintiff here failed to do so. As noted, a prediction that a different result would have been achieved had plaintiff taken the measures referred to above cannot be stated with absolute assurance. On the other hand, it cannot be stated with absolute assurance that

p. 22. This testimony appears somewhat at variance with plaintiff's position in this action. *See* plaintiff's post trial brief, pp. 30–32.

17. Plaintiff did write the Navy in November, 1964 before the litigation was instituted that the Italian Customs Authority had indicated payment of the duties would be sought from the plaintiff and asked the Navy to "take the matter up with the Customs Authority and try to eliminate the fine." Precisely what plaintiff anticipated the Navy would do is unclear. However, plaintiff carried on the litigation without in any wise attempting to obtain basic documentary evidence or the testimony of witnesses to support the exemption, as referred to above. The plain-

tiff did not notify the Navy it had been ordered to pay the duty or of the lawsuit until February 1967, after plaintiff's liability had been determined by the lower tribunal.

18. Hessler v. Hillwood Mfg. Co., 302 F.2d 61 (6th Cir. 1962); Carole Stupell, Ltd. v. Blenko Glass Co., 137 F.Supp. 335 (S.D.W. Va.1955).

19. Aetna Casualty & Surety Co. v. Phoenix Nat'l Bank & Trust, 285 U.S. 209, 52 S.Ct. 329, 76 L.Ed. 709 (1932); Grace Lines, Inc. v. Central Gulf S. S. Corp., 416 F.2d 977 (5th Cir. 1969), cert. denied, 398 U.S. 939, 90 S.Ct. 1843, 26 L.Ed.2d 271 (1970); Martin Co. v. United States, 163 F.Supp. 376, 143 Ct.Cl. 551 (1958).

they would not have changed the result. It is sufficient that plaintiff was under a duty to take reasonable steps to protect the defendant's interests if it intended to seek indemnification from defendant in the event it were liable for the customs duties, and it failed to do so. Accordingly, defendant is under no obligation to indemnify plaintiff.[20]

The defendant is entitled to judgment dismissing the complaint upon the merits.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.